Paul Royster sued Charles Atkins and Atkins Ford Sales, Inc., based upon alleged defamatory statements. The jury awarded Royster $100,000 in compensatory damages and $50,000 in punitive damages. The court entered a judgment on that verdict. The defendants moved for a judgment notwithstanding the verdict (JNOV) or a new trial, or, in the alternative, for a remittitur. The circuit court denied the motion, and the defendants appealed.
Although the testimony in this case conflicted at times, the evidence tended to show the following: Paul Royster was employed in the tractor parts department at Atkins Ford Sales, Inc. ("Atkins Ford"), beginning in the summer of 1985, following his graduation from high school. In late November 1985, the owner of Atkins Ford, Charles Atkins, wrote a $1,500 check on the Atkins Ford account, payable to "Lizzie Mullinax or Paul Royster." Royster was asked to cash the check and return to Atkins *Page 199 
Ford with the money, which he did. The cash was given to Charlie Gunter, the manager of Atkins Ford's tractor shop, so that he could purchase a tractor from Lizzie Mullinax. Gunter did not purchase the tractor, and after Gunter informed Atkins of this, either he or Atkins gave the $1,500 in cash to Royster and told him to take it to the Atkins Ford office. Royster testified that he took the money to the office as he had been instructed to do.
In the early part of 1986, Judy Hood, Atkins Ford's bookkeeper, informed Atkins that she could not account for $1,500 in the business's books. After searching unsuccessfully for the money, Atkins questioned Royster about whether he had taken the cash to the office. Royster told Atkins that he gave the money to one of the employees in the office, but that he could no longer remember whom he had given the money to. He stated once that he might have laid the money on a desk in the office. Atkins loudly accused Royster of stealing the money, in the presence of Judy Hood and other Atkins Ford employees. Royster steadfastly maintained that he had taken the money to the office, but each of the office employees denied receiving the money from him or seeing him deliver the money to anyone else in the office. Royster went home and told his mother and stepfather, Mr. and Mrs. Harry Stallter, about the situation. Atkins also telephoned Mrs. Stallter and told her that her son had taken $1,500 and that he needed to return it. Atkins testified that he had placed the telephone call because he had wanted Mrs. Stallter's help in recovering the money.
Atkins contacted the Walker County district attorney's office about the missing money. Investigator Frank Cole spoke with a few of the people at Atkins Ford and asked Hood and Royster to submit to a polygraph test. Neither of them was given a polygraph test, although they both had agreed to submit to testing. The evidence and information Cole obtained was turned over to a grand jury, but Royster was not charged.
Royster's employment with Atkins Ford was terminated approximately two weeks after the investigation of the missing money was completed. Charlie Gunter wrote a letter on an Atkins Ford letterhead stating that Royster had been laid off because business was slow. Although he filed applications for several jobs, Royster was not hired by another employer for approximately four months. Royster testified that he believed he was not hired because of the accusations of theft made at Atkins Ford, but he did not know whether any of the prospective employers had contacted anyone at Atkins Ford for a reference.
Not long after Royster was fired, Thomas Harris was hired to replace him. Harris testified that Atkins told him that Royster had been fired for stealing $1,500. Harris also testified about an incident that took place while he was employed at Atkins Ford when Royster rode a motorcycle to the business. According to Harris, Atkins stated, upon seeing Royster, "I probably bought that motorcycle for Paul Royster with the money he stole from me."
While there was testimony that two postings in Atkins Ford's books totalling $1,500 were later found to have been posted to incorrect accounts, there was also testimony that the $1,500 given to Royster was never accounted for.
Royster filed suit on May 19, 1987, claiming that Atkins had made defamatory statements about him, both orally and in writing. During the jury trial in this matter, the defendants' motion for a directed verdict on the libel count was granted. The jury later returned a verdict in favor of Mr. Royster on the slander count.
 I.
At trial, the defendants argued that each of the various statements allegedly made was subject to a qualified or conditional privilege. They now argue that the trial court erred in failing to make a legal determination of whether the communications were protected by such a qualified privilege and, instead, submitting the issue to the jury. *Page 200 
To establish a prima facie case of defamation, the plaintiff must show that the defendant published a false and defamatory statement concerning the plaintiff to a third person.Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085 (Ala. 1988). Statements made subject to a qualified privilege are not actionable unless the plaintiff can prove that the defendant acted with malice. Mead Corp. v. Hicks, 448 So.2d 308, 313
(Ala. 1983). The determination of whether a statement is privileged is a question of law for the trial judge. Webster v.Byrd, 494 So.2d 31 (Ala. 1986). The test for determining whether a conditional or qualified privilege exists is as follows:
 " 'Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.' "
Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117 (Ala. 1976), quoting Berry v. City of New York Ins. Co., 210 Ala. 369,98 So. 290 (1923).
The communications complained of were made by Mr. Atkins to members of the Jasper Police Department, an investigator for the Walker County district attorney's office, various employees of Atkins Ford, and Mr. and Mrs. Stallter. The trial court gave the jury the following charges on the issue of privileged communications:
 "Where the Defendant acted in the discharge of any public or private duty, whether legal or moral, which the ordinary exigencies of society or his own private interest, or even that of another called upon him to perform, the law simply withdraws the inference of malice and gives protection to the Defendant upon the condition that actual or expressed malice is not shown by the Plaintiff. And the burden of proof is upon the Plaintiff to reasonably satisfy you that actual or expressed malice was present in the communication."
 "I charge you, members of the jury, that where a party makes a communication, and the communication is one in which the party has an interest and it is made to another having a corresponding interest, a communication is privileged if made in good faith and without actual malice."
 "I charge you further, that it is sufficient if the party makes the statement under a duty which is social or moral in nature and the party in good faith believes he has acted in pursuance thereof."
The second and third charges quoted above were given at the defendants' request; the defendants cannot complain that the court instructed the jury as they requested. Liberty Nat'l LifeIns. Co. v. Beasley, 466 So.2d 935 (Ala. 1985). Furthermore, the trial court's instructions indicate that it determined from the evidence presented that some of the statements were subject to a conditional or qualified privilege, and that the jury was then adequately apprised of the law regarding the existence and abuse of privilege. Accordingly, we find that the trial court made the necessary legal determinations in this case.
 II.
The defendants also argue that the trial court erred in denying their motion for a JNOV or a new trial because, they argue, all of the statements made were subject to a conditional privilege and none was made with the actual malice necessary to defeat a conditional privilege. We disagree.
As noted earlier in this opinion, a communication may be conditionally privileged if it is one in which the party has an interest, and is made to another having a corresponding interest. More specifically, *Page 201 
this Court has held that communications among employees in the course of transacting the company's business and in the proper scope of the employees' duties do not constitute a publication.Nelson v. Lapeyrouse Grain Corp., supra. Under these principles, Atkins's communications to employees that were necessary in determining the reason for the $1,500 shortage did not constitute publication. However, communications made to individuals outside this limited group of employees do not fall within this "no publication" rule. It cannot reasonably be argued that Atkins's statements to Royster's parents and to Harris, an employee hired to replace Royster, were necessary in determining the location of the missing funds or were within the line of Atkins's duties. Furthermore, those communications were not conditionally privileged. The statements to Harris and Royster's parents were not prompted by any duty, and they were not made to individuals having a corresponding interest in recovering the funds. Accordingly, we hold that the trial court did not err in denying the defendants' motion for JNOV or for a new trial on these grounds.
 III.
The defendants next argue that the trial court erred to reversal when it restricted their questioning of Frank Cole, an investigator for the district attorney's office. Cole testified that the evidence he had obtained during his investigation was presented to a grand jury, and that the grand jury had determined that there was not enough evidence upon which to prosecute Royster. The defendants' attorney attempted to elicit from Cole testimony to establish that, in a criminal proceeding, a defendant's guilt must be proved beyond a reasonable doubt. The trial court sustained the plaintiff's objection to questions regarding legal burdens of proof. The defendants argue on appeal that the trial court's ruling somehow deprived them of a defense to this action and that the jury should have been informed of the higher standard of proof in criminal cases. We disagree.
First, the burden of proof in a criminal case was not relevant to the slander case before the jury. Second, even if the jury should have been informed of the burden of proof in a criminal case, the trial judge, and not a witness, would have been the proper person to convey the information to the jury.Raines v. Williams, 397 So.2d 86 (Ala. 1981).
 IV.
The next allegation of error relates to the trial court's jury charges. The trial court instructed the jury that theft of $1,500 is a Class B felony with a maximum possible sentence of 20 years. The defendants claim that this charge was obscure and confusing to the jury. The record shows that the trial court charged the jury that defamation is a communication to a third person of a false imputation of crime or moral delinquency concerning the plaintiff. Since this instruction was given, it was also appropriate for the trial court to charge the jury that theft of $1,500 was a crime. Furthermore, error, if any, in giving this charge to the jury is not reversible, because it has not been shown that it probably resulted in any prejudice to the plaintiff. Rule 45, A.R.App.P.
The defendants also objected to the trial court's charges on actual malice, but we find no error in those charges. One of the instructions on "actual malice," that it is defined as knowledge of the falsity of a statement or the reckless disregard of whether the statement is true or false, was given at the defendants' request. The other instruction said that actual malice may be shown by evidence of ill will, hostility, threats, rivalry, former slanders, or the violence of a defendant's language, and this is a correct statement of the law. See Kirby v. Williamson Oil Co., 510 So.2d 176 (Ala. 1987).
 V.
Finally, the defendants contend that the damages award is excessive and they argue that the court erred in denying their motion for a JNOV, a new trial, or a remittitur. In support of their motion, the defendants *Page 202 
argued that Royster failed to prove that he suffered damages so extensive as to justify a $100,000 award and that there was no evidence to support an award for punitive damages. The court conducted a thorough analysis pursuant to Hammond v. City ofGadsden, 493 So.2d 1374 (Ala. 1986), and then issued an extensive order denying the defendants' motion. In its order, the trial court specifically found that the jury had been fair and impartial, that the verdict was supported by the evidence, that the compensatory damages award was not unreasonable, and that the punitive damages award was not excessive.
The trial court noted that the facts were hotly contested, but stated that the evidence supported a finding that the defendants maliciously slandered Royster by accusing him of the theft of $1,500. Where a verdict is supported by the evidence, the trial court should exercise its discretion in favor of the validity of the jury verdict. Hammond, supra. Furthermore, a trial court's refusal to grant a new trial on the ground that the verdict is against the great weight of the evidence will not be reversed unless the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it is wrong and unjust. Green Oil Co. v. Hornsby,539 So.2d 218 (Ala. 1989). The defendants have not met this burden. Accordingly, the trial court's ruling on this issue is due to be affirmed.
With regard to the issue of remittitur, we note initially that the trial court applied the principles of law adopted inHammond and carefully set out the reasons explaining its decision to deny a remittitur. Further, jury verdicts are presumed correct, and that presumption is strengthened when the trial judge refuses to grant a new trial. Super Valu Stores,Inc. v. Peterson, 506 So.2d 317 (Ala. 1987). Finally, it is well established that, in considering the excessiveness of a verdict, each case must be determined on its own facts, and a court of review may not substitute its judgment for that of the jury. Green Oil Co., supra. With these principles in mind, we have reviewed the record and the trial court's thorough Hammond
order. The record presents us with no reason to disagree with the trial court's findings and ruling on the issue of damages.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur. *Page 746