INGRAM, Justice.
This appeal is from an unsuccessful will contest and a subsequent denial of a motion for new trial.
Ema Ellen Robinson, the only surviving sibling of Lula Bell Williams, filed this action to contest Williams’s will. Williams left her entire estate, valued at approximately $75,000, to Cecil Griffin. The will also named Griffin as executor. Robinson claimed that Griffin had exercised undue influence on Williams and that at the time the will was executed Williams did not have the mental capacity to make a will. The cause was removed from the Probate Court of Lee County to the circuit court, where a jury trial was held. The jury returned a verdict in favor of Griffin, upholding the will. Robinson filed a motion for judgment N.O.V., or in the alternative, a new trial, contending that the jury’s verdict was against the great preponderance of the evidence. The trial court denied the motion, and Robinson appealed.
Robinson, in her brief to this Court, states that she realizes she has “taken on a formidable task in trying to get a new trial based on this jury’s having brought forth a verdict contrary to the great preponderance of the evidence.” Indeed, this Court, in Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala.1990), stated:
“No ground for reversal of a judgment is more carefully scrutinized or rigidly limited than the ground that the verdict of the jury was against the great weight of the evidence. See Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972). Rather, there is a strong presumption of correctness of a jury verdict in Alabama, Wagner v. Winn-Dixie, 399 So.2d 295 (Ala.1981), and that presumption is strengthened by the trial court’s denial of a motion for new trial. Chapman v. Canoles, 360 So.2d 319 (Ala.1978). An appellate court must review the tendencies of the evidence most favorably to the prevailing party and indulge such inferences as the jury was free to draw. Ashbee v. Brock, 510 So.2d 214 (Ala.1987). The reviewing court will not reverse a judgment based on a jury verdict unless the evidence is so preponderant against the verdict as to clearly indicate that it was plainly and palpably wrong and unjust. Mahoney v. Forsman, 437 So.2d 1030 (Ala.1983); see, also, Ashbee v. Brock, supra.”
Therefore, in order for this Court to reverse the trial court’s denial of the motion for new trial, the evidence in the record must clearly indicate that the verdict of the jury in favor of Griffin is plainly and palpably wrong and unjust. After reviewing the record in this case, we find that there was conflicting evidence as to whether Williams had the mental capacity to make a will and whether Griffin had exercised undue influ *968 ence on Williams. However, we find sufficient evidence to support the jury’s finding that Griffin did not exercise undue influence on Williams and that Williams had the mental capacity to dispose of her property by will.
The testimony of Judy Anderson is particularly noteworthy. Anderson, who had no interest in the will contest, but who had been appointed by the Probate Court of Lee County as the curator of Williams’s property, was called by Robinson as a witness. Anderson testified that she had had many conversations with Williams about Williams’s will. On cross-examination, Anderson testified as follows:
“Q. But you would have conversations with her about her will and she realized she had made a will in June, is that correct?
“A. She realized there was a will.
[[Image here]]
“Q. When you would mention to her about a will she would say, she would — she understood she had made a will?
“A. She understood there was a will and—
“Q. And she understood that Mr. Griffin was the beneficiary of that will?
“A. Right. Uh-huh.
“Q. And she understood that she still had relatives that lived in Pittsburgh?
“A. That’s right.
“Q. And she was aware that Mary Helen Berry, her niece, lived right behind her?
“A. That’s right.
“Q. And she was aware that she lived in a house, I think, on Poster Street or Harper Street?
[[Image here]]
“A. Right.
“Q. And that that house was hers?
“A. Right.
“Q. And did she also understand that she had several checking accounts and savings accounts basically at Central Bank?
“A. She did. We continued, once I became curator we continued to let the statements come to her house and I would take them from her house so she could see herself.
“Q. All right. So she could see her statements and review those?
“A. She would see them.”
Clearly, the testimony of Anderson, who had numerous opportunities to observe Williams during the time after the will was executed and up until the time of her death, supports the jury verdict that the will was not the product of undue influence exerted by Griffin and that Williams had the mental capacity to make a will. Therefore, we are compelled to affirm the judgment in favor of Griffin.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.