Isabell T. MOORE, Plaintiff,

v.

BENEFICIAL NATIONAL BANK USA, et al., Defendants.

No. CV–94–A–1050–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 21, 1995.

tional Bank USA ("BNBUSA") filed its own Motion for Summary Judgment. On February 9, 1995, BNBUSA filed a Motion to Strike certain portions of the affidavit of Isabell Moore which accompanied her opposition to the summary judgment motions.

On July 5, 1994, Isabell T. Moore ("Moore") filed a complaint in Montgomery County Circuit Court. In the complaint, Moore alleges breach of contract, defamation, violation of the Fair Credit Reporting Act, and intentional infliction of emotional distress. Specifically, Moore contends that the defendants reported negative credit information to credit reporting agencies and that despite a contractual agreement to delete ·such information, the information remained on Moore's credit history causing her to be denied credit and to suffer humiliation and emotional distress. Rhodes and BNBUSA removed the case to federal court on. the basis of both diversity and federal question jurisdiction.

For the following reasons, the court finds that BNBUSA's Motion for Summary Judgment is due to be GRANTED. Rhodes' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part. The court also finds that the Motion to Strike is due to be GRANTED in part and DENIED in part.

Joseph B. Lewis, Montgomery, AL, for plaintiff.

Cecil H. Macoy, Jr, William A. Robinson, Birmingham, AL, Scott R. Talkington, Montgomery, AL, for defendants.

*MEMORANDUM OPINION*

ALBRITTON, District Judge.

## I. INTRODUCTION

This cause is now before the court on two Motions for Summary Judgment and a Motion to Strike. On January 13, 1995, Defendant, Rhodes Financial Services Corp. and Rhodes, Inc. (collectively "Rhodes") submitted a Motion for Summary Judgment. On that same date, Defendant, Beneficial Na-

## II. FACTS

The court has carefully considered all deposition excerpts, affidavits, and documents submitted in support of and in opposition to the Motions for Summary Judgment. The submissions, viewed in the light most favorable to the plaintiff, establish the following facts:

Rhodes is in the retail furniture business. Prior to June 1992, Rhodes regularly assembled and/or evaluated consumer credit information in connection with its furniture sales. (Rhodes' Ex. K). Prior to June 1992, Rhodes also utilized consumer credit reporting information which it obtained from consumer credit reporting agencies to evaluate the credit worthiness of potential retail furniture customers. *Id.* On June 22, 1992, Rhodes sold all of its receivables to BNBUSA. *Id.*

**1252**

After this sale, BNBUSA paid Rhodes a fee for Rhodes' ongoing receivables and then BNBUSA collected the receivables for itself. *Id.* After this sale, Rhodes no longer assembled, evaluated or used consumer credit information as it had previously. *Id.* At no time relevant to the allegations of this complaint, did BNBUSA act as Rhodes' agent for purposes of collecting Rhodes' receivables, nor did Rhodes retain any right of control over BNBUSA's collection of receivables which belonged to Rhodes prior to the sale. *Id.* Since June 22, 1992, BNBUSA has collected on the receivables which it acquired from Rhodes. *Id.*

Through no fault of her own, Moore acquired an account with a balance due at Rhodes. Moore married James Pratt ("Pratt") and remained married to him until February 21, 1992 when their marriage was dissolved by a Final Decree of Divorce. The Divorce Decree incorporated a Property Settlement Agreement whereby Moore and Pratt agreed that there were no joint debts of the marriage and that any debts of either party in his individual name would be the party's exclusive responsibility. Pratt had a charge account with Rhodes. At all times during Moore's marriage to Pratt this account was in Pratt's name alone. At some point after the divorce, Pratt arranged to have Rhodes substitute Moore for him as the obligor on his credit account. Pratt did this without Moore's consent or knowledge even though it apparently violated the Property Settlement Agreement. Through May, 1992, Rhodes sent monthly invoices to Moore on the account. The total charge on the invoices was $1,262.89. After the sale of Rhodes' accounts receivable, BNBUSA sent Moore its first payment request in June of 1992.

**Moore's First Suit**

In September of 1992, Moore filed suit in Montgomery County against Pratt, Rhodes, and other creditors with whom she was having problems related to the divorce. Moore sought, *inter alia,* discharge from all obligation to pay for Pratt's Rhodes account and deletion from her credit records of any negative credit history or rating relating to this account. Moore also sought injunctive relief against further efforts by Pratt to shift his debt to her and damages from Pratt for defamation.

On January 11, 1993, Moore entered into a *pro tanto* settlement agreement with Rhodes. Although Moore's suit named BNBUSA as a defendant, BNBUSA was not a party to the *pro tanto* release between Rhodes and Moore. BNBUSA did not agree to delete anything from Moore's credit reports. Pursuant to the settlement agreement, Moore released Rhodes and its officers, agents, representatives, employees, servants, assigns, administrators, and successors from any and all liability of every kind, character, nature and description whatsoever, whether known or unknown, growing out of the facts and circumstances in the complaint. In return Rhodes agreed: to delete and/or withdraw from all credit records any negative reference to Moore's credit history or rating; to discharge Moore from all obligations to pay for products purchased on the Rhodes account; and to refrain from the collection of this debt. Moore and Rhodes filed a Joint Motion to Dismiss with Prejudice which the circuit judge granted on January 19, 1993. It is undisputed that since the Rhodes/Moore settlement, Rhodes has refrained from attempting to collect any debt owed by either Moore or Pratt in connection with the Rhodes account.

After successfully negotiating a settlement with Pratt, Moore filed a Motion for a Final Order in February 1994 wherein she asked the court to entered an order with judgment in favor of Moore against Pratt for the agreed amount. She also asked the court to dismiss with prejudice all remaining claims and issues in the cause. On March 29, 1994, Judge Reese of the Montgomery County Circuit Court entered a Final Order. This order described the terms of the settlement agreement between Moore and Pratt. Additionally, the order states that "[a]ll other claims as between the parties hereto are DISMISSED with prejudice."

Before Rhodes' corporate headquarters could authorize the deletion of any reference to the indebtedness, the Operations Manager of the Montgomery store, Jan Wise ("Wise") needed to send the signed *pro tanto* release

and Motion to Dismiss to the Rhodes corporate headquarters. (Rhodes' Ex. K). Rhodes admits that Wise never sent these documents to the corporate headquarters. *Id.* At the time of the settlement of Moore's first suit, Wise was in the process of being transferred to a Rhodes store in a different state. *Id.* Wise avers that at the time she left the Montgomery store she had not yet received copies of the *pro tanto* release and Motion to Dismiss. (Rhodes' Ex. D). Wise further affirms that her replacement at the Montgomery store was aware that the documents were expected and needed to be sent to Atlanta. *Id.* Somehow, the documents never arrived in Atlanta. Thus, Rhodes inadvertently failed to instruct any credit reporting agencies to delete references to the Rhodes account from Moore's credit history. *Id.*

### Moore's Subsequent Problems

In her affidavit, Moore describes a time in mid-February 1993 when she attempted to purchase clothing at Gayfer's, a department store, by opening a line of credit. Moore states that she could not get a Gayfer's charge account because of a negative credit history. As a consequence of the rejection of her credit application, Moore felt humiliated and embarrassed in front of the friend with whom she was shopping. She was also required to place the clothes that she had planned to purchase back on the rack.

Moore avers that on June 15, 1993 she applied for cellular phone service with Alltel Mobile ("Alltel"). She avers that she was not able to get cellular telephone service. (Moore Aff. p. 119). In her affidavit, Moore attests that she was embarrassed, publicly humiliated, frustrated and degraded by her unsuccessful attempt to procure cellular phone service. After she unsuccessfully submitted her application, Moore contacted the credit bureau and learned that the negative credit history that Rhodes had agreed to delete was still appearing on Moore's credit profile.

Moore avers that as a result of the defendants' failure to delete the negative credit information from her credit history she has suffered in many ways. She cannot sleep. She developed severe stress-related headaches and lost weight. She suffers from upset stomach, nausea, and depression.

Moore filed the instant suit after she discovered that Rhodes had failed to delete references to the Rhodes Account from her credit history with various credit reporting agencies. Moore contacted TRW, Inc. in January, 1994. When she received a copy of a report detailing her credit history, she learned that Rhodes had failed to delete references to the Rhodes account from her credit history with TRW, Inc. This credit report showed that she had an account with Rhodes which was past due and written off as uncollectible.

After she discovered that the information had not been deleted, Moore contacted an attorney and initiated this suit. She did not contact the defendants in an attempt to have them correct the information. (Moore Dep. p. 84–85). Rhodes states that once Moore filed this suit and it became aware of its failure to have the credit reporting agencies delete the information, it notified the credit reporting agencies to delete the information from Moore's history. (Rhodes Ex. K).

### III. MOTION TO STRIKE

On February 1, 1995, Moore filed a brief entitled Plaintiff's Response to Defendants' Motion [sic] for Summary Judgment. In support of this brief, she submitted an affidavit and copies of letters to various of her creditors which she asserts establish that the accounts were "properly disputed." The affidavit is now the subject of BNBUSA's Motion to Strike. BNBUSA argues that portions of the affidavit filed with this court are due to be stricken as hearsay. Furthermore, BNBUSA would have this court strike portions of the affidavit inconsistent with Moore's sworn testimony at her deposition. The court finds that the Motion to Strike is due to be GRANTED in part and DENIED in part.

The focus of Moore's affidavit is the damage which she allegedly sustained as a result of Rhodes' failure to delete the negative credit information from her credit history after Rhodes agreed to do so in January, 1993. Moore describes two occasions when

she was denied credit in 1993. She attributes these denials to Rhodes' failure to delete the information as they had agreed. It may be that this attribution is simply Moore's opinion, however, to the extent that Moore is attempting to establish that this opinion is based on statements of others Moore runs into hearsay problems. Moore's descriptions of the events include representations of what unnamed employees of Gayfer's, Alltel, and unnamed credit bureaus told Moore.

Statements made to Moore by these individuals are hearsay not within an exception, and therefore, the statements are inadmissible. It is clear that Moore cannot offer her version of what was supposedly said to her by the individuals in an attempt to prove the truth of what the individuals said namely, that Moore's applications for credit were denied because of the negative credit information in her credit history regarding the Rhodes' account. *See,* Fed.R.Evid. 801(c). To do so deprives the defendants of their ability to properly attack the statements by cross examination of the individuals who allegedly uttered them.

The Federal Rules of Civil Procedure clearly state that affidavits offered in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, **shall set forth such facts as would be admissible in evidence,** and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e) (emphasis added). To the extent that Moore's affidavit contains inadmissible hearsay as described in the foregoing paragraphs, it does not comport with this rule. Thus, the Motion to Strike is due to be GRANTED to the extent that it asks that the inadmissible hearsay be stricken. Therefore, the court will not consider the hearsay contained in Moore's affidavit.

■ To the extent that the Motion to Strike is based on the contention that portions of the affidavit are inconsistent with Moore's deposition, it is due to be DENIED. Upon a careful reading of the relevant pages of Moore's deposition transcript the court finds that although Moore stated that she did not recall any other times on which she had applied for and been denied credit or a loan, she did so with hesitance. At her deposition, Moore was repeatedly asked if she remembered any time she had been denied credit after January, 1992. (Moore Dep. p. 119–121). She repeatedly stated that she did not know and that she was not sure. *Id.* She also indicated that she needed to check on it to be sure. (Moore Dep. p. 120). The court finds, therefore, that statements in Moore's affidavit indicating that she had been denied a Gayfer's charge are not inconsistent with Moore's deposition. Thus, they are not due to be stricken for that reason.

## IV. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

■ Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See,* Fed.R.Civ.P. 56(c).

## V. DISCUSSION

### A. Count One—Breach of Contract

In Count One of her complaint, Moore alleges that she and Rhodes entered into an agreement and that Rhodes has failed to comply with that agreement in a way that has damaged her. Moore also alleges that BNBUSA, while not a party to the agreement, is in breach of the agreement. She seems to allege that because BNBUSA is allegedly Rhodes' agent for purposes of collecting monies owed and reporting the status of charge accounts to various credit reporting services, BNBUSA is also liable for breach of the agreement. She contends that for purposes of the agreement BNBUSA is the agent of Rhodes and Rhodes is the agent of BNBUSA. Moore concludes that Rhodes and BNBUSA breached the agreement and caused her damages.

#### 1. BNBUSA

■ It is undisputed that BNBUSA was not a party to the settlement agreement between Moore and Rhodes which is the subject of Moore's breach of contract claim. The evidentiary submissions establish that no agency relationship existed between BNBUSA and Rhodes at the time Moore alleges. The affidavit of William J. Kavanaugh, General Credit Manager for Rhodes, establishes that at no time relevant to the allegations of this complaint, did BNBUSA act as Rhodes' agent for purposes of collecting Rhodes' re-ceivables, nor did Rhodes retain any right of control over BNBUSA's collection of receivables which belonged to Rhodes prior to the sale. The affidavit instead establishes that BNBUSA and Rhodes participated in a business transaction whereby Rhodes sold its accounts receivable to BNBUSA. Additionally, the affidavit of Wise, the Rhodes employee who agreed to the settlement on Rhodes' behalf, indicates that Wise accepted the agreement on behalf of Rhodes in return for a promise from Moore to dismiss Rhodes from the case. Nothing in Wise's affidavit supports Moore's theory that Rhodes entered into the agreement on BNBUSA's behalf.

Moore offers no evidence of the existence of an agency relationship between BNBUSA and Rhodes. Moore cannot survive BNBUSA's well-supported Motion for Summary Judgment on Count One by resting on her pleadings or unsupported assertions that an agency relationship existed sufficient to hold BNBUSA to the contract agreed to by Rhodes. Yet, Moore has done just that. Thus, Moore has failed to establish something more than a metaphysical doubt about the existence of an agency relationship between Rhodes and BNBUSA.

■ Moore's claim that Rhodes was acting as the agent of BNBUSA when it entered into the settlement agreement with Moore is unsupported. "It is axiomatic that for an agency relationship to exist, there must be a right of control by the principal over the agent." *Butler v. Aetna Finance Co.*, 587 So.2d 308, 310 (Ala.1991). In this case, there is no evidence that BNBUSA has a right to control Rhodes. Rather, the unconverted evidence reveals that Rhodes acted on its own when it entered into the settlement agreement. No evidence exists that indicates that BNBUSA authorized, approved, ratified, or even had any knowledge of the settlement agreement between Rhodes and Moore. The fact that the settlement agreement between Rhodes and Moore was a *pro tanto* settlement demonstrates that Rhodes was not acting as BNBUSA's agent, rather Rhodes was acting solely on its own behalf and extricating itself alone from the suit. Additionally, the settlement agreement did not lead to a dismissal of Moore's claims against BNBU-

SA, rather the dismissal released only Rhodes. Thus, Moore's bare contention that Rhodes acted as BNBUSA's agent cannot support her claim that BNBUSA is liable to her for allegedly breaching that contract.[1] In accordance with the foregoing, the court finds that BNBUSA is entitled to summary judgment on Count One of Moore's complaint.

### 2. Rhodes

It is undisputed that Moore and Rhodes entered into a contract on January 11, 1992 which provided the terms of the settlement of Moore's first suit. It is undisputed that the terms of that agreement require Rhodes to refrain from the collection of the outstanding debt and that Rhodes did so. The parties do not dispute that the agreement also required Rhodes to delete negative credit information regarding the account from Moore's credit history. The agreement is silent as to the time of performance of the agreed upon acts. It is undisputed that Rhodes failed to delete the information until after July 1994 when Moore filed this lawsuit against them.

#### a. Time for Performance

The defense raised by Rhodes prevents this court from granting Rhodes' request for summary judgment on Count One. Rhodes argues that it did not breach its contract with Moore because it did fulfill its obligation under the contract eventually by contacting credit bureaus and having the information deleted. Rhodes correctly notes that the contract was silent as to the time by which Rhodes had to act to delete the negative credit history regarding Moore's account. Rhodes correctly argues that the law of Alabama provides that when a contract states that an act is to be done, but does not prescribe a time for its performance, the law requires that act be done within a reasonable time. *See, e.g., Aldridge v. Dolbeer*, 567 So.2d 1267, 1268 (Ala.1990); *Hendrix, Mohr & Yardley, Inc. v. City of Daphne*, 359 So.2d 792, 796 (Ala.1978). However, Alabama law also provides that what is a reasonable time depends upon the nature of the act to be done and all the circumstances relating to that act. *Hendrix*, 359 So.2d at 796. "This, necessarily, is a question of fact to be determined by the trier of the facts...." *Id.* This court cannot, therefore, determine as a matter of law the reasonableness of the length of time that it took Rhodes to contact the credit reporting agencies in order to correct Moore's credit history. Thus, to the extent that Rhodes seeks summary judgment on Moore's breach of contract claim, its motion is due to be DENIED, and Moore may submit the case to a jury for determination of the reasonableness of the time of Rhodes' performance.

#### b. Damages

The Supreme Court of Alabama has had occasion to address the availability of many types of damages for breach of contract. The Supreme Court of Alabama has held that

> [i]n general, damages recoverable for breach of contract are those which result naturally and proximately from the breach, and such as the partes should have contemplated when the contract was made. Damages are awarded to place the injured party in the position he would have occupied had the contract not been breached.

*Marshall Durbin Farms, Inc. v. Landers*, 470 So.2d 1098, 1102 (Ala.1985) (citations omitted). *Accord, Aldridge*, 567 So.2d at 1269–70. The general rule is that a plaintiff cannot receive damages for mental anguish arising from a breach of contract unless the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering. *B & M Homes, Inc. v. Hogan*, 376 So.2d 667, 671 (Ala.1979) (citations omitted). Ordinarily, punitive damages are not recoverable for breach of contract. *Corson v. Universal Door Systems, Inc.*, 596

---

1. Nor can Moore's assertions that BNBUSA was an agent of Rhodes support her attempts to hold BNBUSA liable for Rhodes' breach of the settlement agreement. Under Alabama law, an agent cannot be held liable for a breach of contract committed by the principal. *Harrell v. Reynolds Metals Co.*, 495 So.2d 1381, 1389 (Ala.1986).

So.2d 565, 572 (Ala.1991). *Accord, Nolin v. Dismukes,* 554 So.2d 1019, 1020–21 (Ala. 1989); *John Deere Indus. Equip. Co. v. Keller,* 431 So.2d 1155, 1157 (Ala.1983); *Geohagan v. General Motors Corp.,* 291 Ala. 167, 279 So.2d 436, 438 (1973). Whatever the damages may be, "[t]he plaintiff has the burden of proving sufficient evidence of his loss to allow the factfinder to calculate the damages without operating from guesswork." *Aldridge,* 567 So.2d at 1270. *Accord, Johnson v. Harrison,* 404 So.2d 337, 340 (Ala. 1981).

 Even if a plaintiff in a breach of contract suit cannot prove that she suffered actual damage as a result of defendant's breach of contract, the plaintiff is entitled to nominal damages upon a showing that a valid contract existed and that defendant breached it. *See, Corson,* 596 So.2d at 570. *Accord, Knox Kershaw, Inc. v. Kershaw,* 552 So.2d 126, 128 (Ala.1989) ("It is well settled, however, that once a breach of contract has been established ... the non-breaching party is entitled to nominal damages even if there was a failure of proof regarding actual damages."); *James S. Kemper & Co. Southeast, Inc. v. Cox & Associates, Inc.,* 434 So.2d 1380, 1385 (Ala.1983) ("When the evidence establishes a breach, even if only technical, there is nothing discretionary about the award of nominal damages.")

 Rhodes argues that Moore has failed to offer evidence of damages sufficient to survive its Motion for Summary Judgment, but this court cannot agree. The court notes that Moore's proof of actual damages seems weak at this point in the case. Moreover, the undisputed submissions do not support Moore's punitive damages claims. Given that Moore may be able to prove that Rhodes breached its contract by failing to perform within a reasonable time, Moore may at least be entitled to nominal damages. Thus, Rhodes' Motion for Summary Judgment is due to be DENIED on this count.

## B. Count Two—Defamation

 To establish a prima facie case of defamation under Alabama law, a plaintiff must show that the defendant published a false and defamatory statement concerning the plaintiff to a third person. *See, e.g., Atkins Ford Sales, Inc. v. Royster,* 560 So.2d 197, 200 (Ala.1990); *Nelson v. Lapeyrouse Grain Corp.,* 534 So.2d 1085 (Ala.1988). Plaintiff cannot successful bring a defamation action for statements which defendants made subject to a qualified privilege unless the plaintiff can prove that the defendant acted with malice. *See, e.g., Atkins,* 560 So.2d at 200; *Mead Corp. v. Hicks,* 448 So.2d 308, 313 (Ala.1983).

 The determination of whether a statement is subject to a qualified privilege is a question of law for the trial judge. *See, e.g., Atkins,* 560 So.2d at 200; *Willis v. Demopolis Nursing Home, Inc.,* 336 So.2d 1117, 1120 (Ala.1976). In making this determination a trial judge must keep in mind the following test:

> [w]here a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.

*Atkins,* 560 So.2d at 200. *Accord, Willis,* 336 So.2d at 1120; *Berry v. City of New York Ins. Co.,* 210 Ala. 369, 98 So. 290 (1923). The Alabama Supreme Court has held that a report to a credit reporting agency is generally held to be qualifiedly privileged. *Liberty Loan Corp. of Gadsden v. Mizell,* 410 So.2d 45, 49–50 (Ala.1982).

### 1. BNBUSA

 The court notes that the Final Order entered in Moore's first case against BNBUSA, Pratt, Rhodes and others dismissed all of Moore's claims with prejudice. BNBUSA argues that this dismissal bars Moore from reasserting claims against it for

anything arising out of the facts which were the subject of the first lawsuit. The court agrees that the elements of res judicata are satisfied and that Moore is barred from recovering for allegedly defamatory statements made by BNBUSA[2] prior to the entry of that Final Order. *See, Ex parte State of Alabama ex rel. Harell,* 588 So.2d 868, 869 (Ala.1991) (citations omitted).

Moore alleges that on December 3, 1993, BNBUSA falsely reported that Moore's balance was $1,427 and that this report was made with a conscious and knowing disregard of the rights of Moore. As previously discussed, this claim arose before the final resolution of Moore's first claim and is properly characterized as arising out of the same subject matter as Moore's first suit. Thus, res judicata bars Moore from claiming for this allegedly defamatory statement by BNBUSA as she allowed her previous suit against BNBUSA to be dismissed with prejudice.

In her complaint, Moore alleges also that BNBUSA has negligently and/or intentionally persisted in falsely reporting to credit reporting services that Moore's account is seriously past due and written off as uncollectible. This allegation fails to specify whether BNBUSA made false reports to credit reporting agencies after the disposition of her first lawsuit. If BNBUSA did make such reports, Moore cannot be expected to have raised claims for them in her first lawsuit, and thus, such claims are not barred by res judicata. The evidentiary submissions before the court fail to inform the court of the last date on which BNBUSA reported to a credit agency that Moore's account was seriously past due and uncollectible.

Even assuming that BNBUSA made such a report after March 29, 1994, however, Moore cannot successfully recover

from BNBUSA for defamation because the communication was qualifiedly privileged. It is undisputed that BNBUSA and the credit reporting agencies had an interest in Moore's credit history. This court finds as a matter of law that any communication by BNBUSA to a credit reporting agency is subject to qualified privilege unless Moore can show BNBUSA acted in bad faith. Despite the fact that Alabama law requires Moore to prove bad faith to escape qualified privilege, Moore has failed to present evidence in support of this element of her case. Moore offers no evidence from which a reasonable jury could conclude that BNBUSA was not acting in good faith when it reported Moore's debt to the credit agency.[3] Thus, Moore's defamation claim is due to be DISMISSED as it pertains to BNBUSA.

### 2. Rhodes

Moore's defamation claims against Rhodes merit an analysis similar to the one in which the court engaged for BNBUSA. The court finds that res judicata bars Moore from litigating any defamation claims for statements Rhodes made before the entry of the order dismissing Moore's suit and the *pro tanto* settlement agreement. Thus, Moore may only recover in this suit if she can establish facts from which a reasonable jury could conclude that Rhodes published defamatory statements to a third person on some date after the termination of Moore's first suit.

Although Rhodes may have failed to delete existing information from Moore's credit history, Moore offers no evidence that Rhodes published any defamatory statement to a credit reporting agency or any other third party after the termination of the first suit. Without a publication of a defamatory statement there can be no defamation. As of June, 1992, all of Rhode's receivables had

2. Res judicata may be pleaded as a bar, not only to matters actually presented in the first suit, but also as to any other available matter that might have been presented in the first suit. *See, Whisman v. Alabama Power Co.,* 512 So.2d 78, 81–81 (Ala.1987).

3. The court finds without merit Moore's argument that BNBUSA's alleged breach of an agreement to delete the information supports an infer-

ence of bad faith. As discussed in Count One, BNBUSA was not a party to the settlement agreement between Rhodes and Moore. Moore offers no evidence whatsoever that BNBUSA ever agreed to delete the information. Where, as here, there is no evidence that an agreement exists, an alleged breach of that alleged agreement cannot be offered as evidence of bad faith.

been sold off, and it seems unlikely that Rhodes would report problems with accounts which it no longer owned during the relevant time frame. Without some evidence from Moore from which a reasonable jury could conclude that a defamatory publication took place, the court must grant Rhodes' Motion for Summary Judgment as it applies to Count Two of Moore's Complaint, and dismiss this count.

### C. Count Three—Fair Credit Reporting Act

In Count Three of her complaint, Moore seeks to recover under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. She alleges that the defendants are providers and reporters of consumer credit, and as such, they are under an affirmative obligation to ensure that obsolete information is not included in any consumer report. Moore contends that defendants violated this obligation by allowing the continued inclusion of obsolete and inaccurate information in a consumer report. For the reasons that follow, the court finds that defendants are entitled to summary judgment on Count Three and that it is due to be DISMISSED.

The Fair Credit Reporting Act ("FCRA") imposes various requirements on consumer reporting agencies and users of credit report information. The first several sections of the FCRA establish requirements for consumer reporting agencies. *See,* 15 U.S.C. §§ 1681b, 1681c, 1681e, 1681f, 1681g, 1681h, 1681i, 1681j, 1681k, & 1681*l*. Section 1681m outlines the requirements the FCRA imposes on users of consumer reports. Section 1681n of the Act establishes civil liability for willful noncompliance. It provides that

[a]ny consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce liability under this section, the

costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n. Using similar language, Section 1681*o* of the FCRA creates civil liability for negligent noncompliance. 15 U.S.C. § 1681*o*.

Although Moore asserts that Rhodes and BNBUSA are either "reporters or users of credit under 15 U.S.C. §§ 1681 et seq." who have by their conduct "placed themselves within the confines of the law," the court finds these assertions without merit. Rhodes and BNBUSA are not consumer reporting agencies, nor did they prepare a consumer report as defined in the FCRA. Additionally, the conduct of the defendants upon which Moore's claim rests does not amount to a violation of the section of the FCRA Moore cites.

Section 1681a(f) of the FCRA defines a consumer reporting agency as

any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Rhodes and BNBUSA do not fall within this definition. They do not assemble or evaluate consumer credit information for the purpose of furnishing consumer reports to third persons.

Moreover, the information communicated by Rhodes and BNBUSA does not fall within the definition of consumer report. The FCRA explains that the term consumer report means

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving

as a factor in establishing the consumer's eligibility for (1) credit or insurance ... or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title.

15 U.S.C. § 1681a(d) (emphasis added). This section further provides that the term consumer report does not include "any report containing information solely as to transactions or experiences between the consumer and the person making the report." *Id.* When a business furnishes information based solely upon its own experience with a consumer, the information is not a consumer report and the business is not under these circumstances a consumer reporting agency. *See, Smith v. First Nat'l Bank of Atlanta,* 837 F.2d 1575, 1578 (11th Cir.) *cert. denied,* 488 U.S. 821, 109 S.Ct. 64, 102 L.Ed.2d 41 (1988); *Rush v. Macy's New York, Inc.,* 775 F.2d 1554, 1557 (11th Cir.1985); *Alvarez Melendez v. Citibank,* 705 F.Supp. 67, 69 (D.P.R.1988); *Mitchell v. First Nat'l Bank of Dozier,* 505 F.Supp. 176, 177 (M.D.Ala.1981). The information which Rhodes and BNBUSA provided to the consumer reporting agencies which eventually compiled consumer reports regarding Moore was based solely on the transactions believed to be with Moore. The reporting activity engaged in by Rhodes and BNBUSA is simply not of the type for which the FCRA contemplated liability.

The FCRA requirement upon which Moore attempts to base her claim is Section 1681c.[4] According to this Section, no **consumer reporting agency** may make any **consumer report** containing any of the enumerated items of information. 15 U.S.C. § 1681c. As previously explained, Moore cannot bring claims against Rhodes and BNBUSA as consumer reporting agencies, which they are not, for making consumer reports, which they did not make concerning Moore.

 Even if Rhodes and BNBUSA were consumer reporting agencies within the definition of the FCRA which had prepared a consumer report about Moore, her claim must fail because the report made did not contain items forbidden by Section 1681c. The information in Moore's credit history of which she complains is not one of the following items of obsolete information the inclusion of which in a consumer report is prohibited by Section 1681c: a case under the Bankruptcy Act or Title 11 which is more than ten years old; suits and judgments more than seven years old; a paid tax lien more than seven years old; accounts placed for collection or charged to profit and loss which antedate the report by more than seven years; an arrest, indictment or criminal conviction more than seven years old; other adverse information which antedates the report by more than seven years. *See,* 15 U.S.C. § 1681c. Thus, this section does not provide that a consumer can sue for the inclusion of information known to be incorrect, rather it provides liability for consumer reporting agencies which issue consumer reports containing stale information. Rhodes and BNBUSA have not done so and cannot be held liable under this section of the FCRA.

 Finally, Moore's claims under the FCRA cannot be saved by a finding that Rhodes and BNBUSA are users of consumer reports. The FCRA requires that whenever a user of a consumer report denies credit or insurance to a consumer or increases the charge for credit or insurance on the basis of a consumer credit report, the user of the consumer report must advise the consumer against whom the action was taken of the action and the reason for it and inform the consumer of the name and address of the consumer reporting agency making the report. 15 U.S.C. § 1681m(a). The allegations of Moore's complaint cannot be read to include a violation of this section. Moore's claim centers on the reporting of information to a credit reporting agency and the subsequent failure to correct that information in a timely fashion; it does not implicate the way in which Rhodes or BNBUSA **used** information they received. Thus, even if Moore

4. In her complaint, Moore referred to this requirement as "15 U.S.C. 1681, §§ 605." The court notes that 15 U.S.C. § 1681c was formerly designated Pub.L. 90–321, Title VI, § 605 and that the phrasing of Moore's allegations seem to be an attempt to bring this claim under what is now Section 1681c. Thus, the court treats Moore's claim as alleging a violation of Section 1681c.

could adduce evidence that Rhodes and BNBUSA sometime use consumer reports she cannot base her claims under the FCRA because her claims have nothing to do with such use.

In accordance with the foregoing analysis, the court finds that Count Three, Moore's claim under the FCRA, is with merit. Rhodes and BNBUSA are entitled to summary judgment on this count and it is due to be DISMISSED.

### D. Count Four—Intentional Infliction of Emotional Distress[5]

Alabama law recognizes the tort of outrageous conduct. *See, American Road Serv. Co. v. Inmon,* 394 So.2d 361, 365 (Ala. 1980). The tort occurs when a defendant's extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to plaintiff. *Id.* The emotional distress caused must be "so severe that no reasonable person could be expected to endure it." *Id.* The extreme and outrageous conduct is "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* Thus, the tort of outrageous conduct consists of the following elements: (1) intentional or reckless conduct by the defendant which was (2) extreme, outrageous, beyond all bounds of decency and utterly intolerable in a civilized society and which (3) caused emotional distress "so severe that no reasonable person could be expected to endure it." *Mohacsy v. Holiday Inns, Inc.,* 603 So.2d 956, 959 (Ala.1992).

The Alabama Supreme Court recently characterized this tort as "a very limited cause of action that is available in only the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993). In fact, there are clearly discernable fact patterns which have been held to constitute the tort of outrageous conduct. These include the following: cases involving wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric means in attempting to coerce an insured into settling an insurance claim; and cases involving egregious sexual harassment. *Id.* Thus, recovery of damages for the tort of outrageous conduct is limited to the most reprehensible situations. *Kizziah v. Golden Rule Ins. Co.,* 536 So.2d 943, 948 (Ala.1988).

The facts of this case do not present the kind of reprehensible situation for which Alabama provides relief in the form of the tort of outrageous conduct. The Alabama Supreme Court has decided that improper collection and repossession efforts coupled with a filing of an adverse report with a credit bureau which caused the plaintiff adverse credit consequences and embarrassment do not rise to the level of extreme behavior encompassed by the tort of outrageous conduct. *Green Tree Acceptance, Inc. v. Standridge,* 565 So.2d 38, 44–45 (Ala.1990). As a matter of law, this case dictates that this court dismiss Count Four. Moore alleges that the defendants reported false information concerning her credit history to credit reporting agencies. She contends that the fact that she had sued them once and won an agreement to correct the information makes such reports even more egregious. The court does not agree. As bad as the failure of Rhodes to abide by its agreement to remove the negative credit information may have been, this court cannot say that it is worse than the facts of *Green Tree.* Additionally, BNBUSA made no such agreement. Although Moore may have been frustrated, degraded, publicly humiliated, and embarrassed by experiences which flowed from the defendants' reports to the credit bureau, the tort of outrageous conduct does not provide recovery for mere insults, indignations, threats, annoyances, petty oppressions, or other trivialities. *See, Inmon,* 394 So.2d at 364–365.

Additionally, Moore offers no evidence from which a reasonable jury could conclude that the defendants' conduct was intentional or reckless. Rhodes maintains that the failure to delete the negative credit history on

---

5. Moore characterizes her claim in Count Four as seeking relief for the Alabama state law tort of intentional infliction of emotional distress. This tort is more often referred to as outrageous conduct, and the court will refer to it as such.

Moore was an "innocent mistake," and Moore fails to refute this averment. (Wise Aff. p. 4). As previously explained, a plaintiff in Moore's position must offer some evidence which suggests that there exists a genuine issue of material fact in order to survive a defendant's motion for summary judgment supported by such evidence. Moore has failed to meet this burden. Even if there were evidence that Rhodes or BNBUSA had acted with the requisite intent or recklessness, Moore has not offered evidence sufficient to survive defendants' motion for summary judgment on the tort of outrageous conduct. The actions of the defendants were not extreme, outrageous, beyond all bounds of decency and utterly intolerable in a civilized society. Furthermore, while Moore's affidavit does demonstrate that she has suffered emotional distress as a result of the defendants' conduct, but she has failed to offer evidence that the defendants' actions caused emotional distress so severe that no reasonable person could be expected to endure it.

For the foregoing reasons, the court finds that the Motions for Summary Judgment filed by Rhodes and BNBUSA are due to be GRANTED as they apply to Count Four of Moore's complaint. Therefore, this count is due to be DISMISSED.

### VI. CONCLUSION

In accordance with the foregoing, the court finds that Rhodes' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part. Additionally, the court finds that BNBUSA's Motion for Summary Judgment is due to be GRANTED, and BNBUSA is due to be DISMISSED. The Motion to Strike is due to be GRANTED in part. In the interests of clarification, the court notes that the only claim remaining for trial is Moore's claim that Rhodes breached its contract.

A separate order will be entered in accordance with this memorandum opinion.

### ORDER

In accordance with the Memorandum Opinion entered on this day, it is hereby ORDERED as follows:

(1) BNBUSA's Motion to Strike is GRANTED to the extent that hearsay is stricken.

(2) BNBUSA's Motion for Summary Judgment is GRANTED as it applies to Count One, and Count One is DISMISSED as to BNBUSA.

(3) Rhodes' Motion for Summary Judgment is DENIED to the extent that it applies Count One.

(4) BNBUSA's Motion for Summary Judgment is GRANTED as it applies to Count Two, and Count Two is DISMISSED.

(5) Rhodes' Motion for Summary Judgment is GRANTED as it applies to Count Two, and Count Two is DISMISSED.

(6) The Motions for Summary Judgment of BNBUSA and Rhodes are GRANTED as they pertain to Count Three, and Count Three is hereby DISMISSED.

(7) The Motions for Summary Judgment of BNBUSA and Rhodes are GRANTED as they apply to Count Four, and Count Four is DISMISSED.