**Marsha Ann BRASSFIELD, Sharon K. Pierson, Plaintiffs,**

v.

**JACK McLENDON FURNITURE, INC., et al., Defendant.**

Civ. A. Nos. 95–D–475–N, 95–D–476–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 11, 1996.

David George Flack, Montgomery, AL, Brenda Faye Dunn Watson, Montgomery, AL, for plaintiffs.

Simeon F. Penton, Carla Rae Cole, Kaufman & Rothfeder, P.C., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

Before the Court are defendants' motions for summary judgment. Defendants Jack McLendon Furniture, Inc. ("McLendon Furniture"), Jack C. McLendon, Lane McLendon, Jeffrey A. Thornell ("Thornell"), and Braxton Thrash ("Thrash"), filed a motion for summary judgment and supporting brief on the claims of plaintiff, Sharon K. Pierson ("Pierson"), on June 12, 1996. Defendants McLendon Furniture, Jack C. McLendon, Lane McLendon, Thornell, and Walter Yarn ("Yarn"), filed a motion for summary judgment and supporting brief on the claims of plaintiff, Marsha Ann Brassfield ("Brassfield"), on June 12, 1996. Plaintiffs filed a joint response to these motions on August 7, 1996. Plaintiffs later filed a joint supplementary response to these motions on September 26, 1996. After careful consideration of the evidence, the arguments of counsel, and the relevant caselaw that defendants' motions are due to be granted in part and denied in part.

### JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue.

### FACTUAL BACKGROUND

These consolidated cases arise from events which took place while Pierson and Brassfield were employed at McLendon Furniture. McLendon Furniture hired Pierson as a salesperson on March 6, 1993. She left the employment of McLendon Furniture on December 8, 1994. Brassfield began working as a salesperson at McLendon Furniture on

March 23, 1993. Her employment was terminated on March 24, 1994.

Jack McLendon is the President and sole stockholder of McLendon Furniture. Jack McLendon Depo. at 6, 20. At all times relevant to this action, Lane McLendon and Thornell were officers of McLendon Furniture. *Id.* at 7. Further, Lane McLendon and Thornell were managers at McLendon Furniture. Lane McLendon Depo. at 13. Although Jack McLendon had final authority over all aspects of the business, he preferred to delegate that authority to department managers and allow them to make some decisions on their own. Jack McLendon Depo. at 20. Thrash began working as a salesperson at McLendon Furniture around 1983. Thrash Depo. at 9–10. Yarn has worked as a salesperson at McLendon Furniture since 1991. Yarn Depo. at 8.

The plaintiffs allege that they were sexually harassed by the managers and salespersons at McLendon Furniture. They further allege that they suffered disparate treatment in the terms and conditions of their employment on the basis of their sex. In July of 1994 and early August of 1994, Brassfield and Pierson, sought legal advice regarding their sexual harassment claims. Pierson Depo. at 324. On August 26, 1994, Pierson filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in which she alleged discrimination, harassment and unequal pay on the basis of her sex and/or gender. In the charge, she named Lane McLendon as her harasser. She received a Notice of Right to Sue January 12, 1995. Pierson filed an amended charge with the EEOC on March 2, 1995. In this charge, she added a claim of retaliation for the actions of McLendon employees taken subsequent to the filing of her initial charge. Pierson received a second Notice of Right to Sue on March 2, 1995. Brassfield filed a charge with the EEOC on August 29, 1994 in which she alleged sexual harassment and disparate pay. In the charge, she named Lane McLendon and Thornell as her harassers. She received her Notice of Right to Sue from the EEOC on January 12, 1995.

*Plaintiff Pierson*

Pierson filed her Complaint on April 7, 1995. She seeks relief against the following defendants for the following causes of action:

(1) McLendon Furniture—Hostile Working Environment, 42 U.S.C. § 2000e et seq. ("Title VII") (Count I); Disparate treatment in pay based on gender, Title VII and 29 U.S.C. § 206(d) (Equal Pay Act ("EPA")) (Count II); gender discrimination in violation of Title VII (Count III); Retaliation for protected activities in violation of Title VII (Count IV); constructive discharge (Count V); invasion of privacy (Count VI); defamation (Count VII); and tort of outrage (Count VIII).

(2) Lane McLendon, Thornell, Thrash— Counts I, II, III, IV, VI, VII, and VIII.

(3) Jack McLendon—Counts I, II, III, IV, and VIII.

The record reveals the following alleged facts in support of Pierson's allegations:

Pierson was initially paid one thousand dollars per month plus two percent commission, while the male salespersons were paid on straight commission of five and a half to six and a half percent. Pierson Depo. at 65–66, Brassfield Depo. at 237. The male salespeople were sworn to keep the pay disparity a secret. Brassfield Depo at 329–30. Pierson was denied compensation or an explanation as to why she failed to receive compensation for special order sales she made. Pierson Depo. at 95–96. Male salespersons were permitted to "pad the hand" of managers, Lane McLendon and Thornell in return for which they would have their special orders filled quickly. *Id.* at 97–100. The managers, Lane McLendon and Thornell reported frequently to Jack McLendon, and Jack McLendon knew the "policies" that Lane McLendon and Thornell had instituted at McLendon Furniture. Brassfield Depo. at 214, 222.

Pierson alleges that she was sexually harassed on an almost continual basis. Pierson Depo. at 206. She claims that she informed managers Lane McLendon and Thornell about the harassment, but they failed to take any preventive measures. *Id.* at 376, 391–92.

With respect to the individual defendants she claims [1]:

### Thornell

Thornell required Pierson to rub his neck and shoulders before he would answer her questions pertaining to work. *Id.* at 137, 190. During one of these incidences, Thornell pulled Pierson towards him so that her breasts pressed against his body. *Id.* at 190–92. On several occasions he asked Pierson to have sex with him at Pierson's apartment. *Id.* at 169–70; Brassfield Depo. at 104–06. He asked Pierson whether her new mattress had been "soil-shielded." Brassfield Depo. at 122–23. Thornell asked Pierson to go skinny dipping with him, and said that he'd like to see her in a wet t-shirt. Pierson Depo. at 393–97. He asked Pierson whether she forgot to wear her underwear. *Id.* at 216. He speculated about Pierson's sex life with other salespersons. Brassfield Depo. at 184. He denied Pierson's request for time off, but subsequently granted a male employee's request to be off during that same period. *Id.* at 138–41.

### Lane McLendon

Lane McLendon told Pierson no woman would be high salesperson while he worked for McLendon Furniture. *Id.* at 213. He told her that females were lesser persons than males. *Id.* at 211–13. His harassment increased after she filed her EEOC charge. *Id.* at 243–45. On two occasions he pointed his finger at her and pretended to "blow her away." *Id.*

Lane McLendon stated one evening that any woman wearing panties could leave early. *Id.* at 171–72. He allowed male salespersons to leave early if they paid him. *Id.* He asked Brassfield whether Pierson wore panties, and said that he couldn't detect any panty lines. *Id.* at 430; Brassfield Depo. at 94–95. He asked Pierson whether the "P" on her necklace stood for prostitute. Pierson Depo. at 214–215. He made comments about

a nude portrait of Pierson which Pierson brought to work. He suggested the portrait be hung in the mattress department. *Id.* at 294–97. He laughed about Thrash's comment that his lunch of chicken breasts made him think of Pierson. *Id.* at 129. He suggested that if he hired a female salesperson, Pierson would have to "take a licking." *Id.* at 214–15. He speculated about Pierson's sex life with other salespersons. Brassfield Depo. at 184.

### Thrash

Thrash commented that the chicken breasts he ate at lunch reminded him of Pierson. Pierson Depo. at 129. He joked about the nude portrait Pierson brought to work. *Id.* at 299. He took bets on whether Pierson or Brassfield would last the longest at McLendon Furniture. *Id.* at 252–53. He speculated about Pierson's sex life with other salespersons. Brassfield Depo. at 184.

### Plaintiff Brassfield

Brassfield filed her Complaint April 7, 1995. She seeks relief against the following defendants for the following causes of action:

(1) McLendon Furniture—Hostile working environment in violation of Title VII (Count I); disparate treatment in pay based on gender, Title VII and 29 U.S.C. § 206(d) (Equal Pay Act ("EPA")) (Count II); gender discrimination in violation of Title VII (Count III); retaliation for protected activities in violation of Title VII (Count IV); invasion of privacy (Count V); defamation (Count VI); assault (Count VII); assault and battery (Count VIII); tort of outrage (Count IX).

(2) Lane McLendon—Counts I, II, III, IV, V, VI, and IX.

(3) Thornell—Counts I, II, III, IV, V, VI, VIII, and IX.

(4) Yarn—Counts I, II, III, IV, VII, and IX.

(5) Jack McLendon—Counts I, II, III, IV, and IX.

---

**1.** The Court finds that Pierson's allegation that Jack McLendon called her a thief is irrelevant, because, unexplainably, Pierson failed to bring a defamation claim against Jack McLendon. In determining the liability of McLendon Furniture, the Court will consider Pierson's claims against defendant Mark Bodden. The facts underlying those allegations can be found in the Court's memorandum opinion, 953 F.Supp. 1424, filed October 8, 1996.

The record reveals the following alleged facts in support of Brassfield's allegations:

Brassfield was initially paid one thousand dollars per month plus two percent commission, while the male salespersons were paid on straight commission of five and a half to six and a half percent. Pierson Depo. at 65–66, Brassfield Depo. at 237. The male salespersons were sworn to keep the pay disparity a secret. Brassfield Depo at 329–30. She was not permitted to ask what sales were included in her paycheck. *Id.* at 248–49. Male salespersons were permitted to "pad the hand" of managers, Lane McLendon and Thornell in return for which they would have their special orders filled quickly. Pierson Depo at 97–100. The managers, Lane McLendon and Thornell reported frequently to Jack McLendon, and Jack McLendon knew the "policies" that Lane McLendon and Thornell had instituted at McLendon Furniture. Brassfield Depo. at 214, 222.

Brassfield was harassed on an almost continual basis. *Id.* at 159. Thornell, and Lane McLendon frequently speculated about Pierson's sex life and anatomy in Brassfield's presence. *Id.* at 184–86. Brassfield asked the managers and other salespersons to stop the harassment, but they failed to desist. *Id.* at 274. With respect to the individual defendants she claims [2]:

### Thornell

Thornell would ask Brassfield to rub his shoulders before he would answer her work related questions. *Id.* at 101–02. He called Brassfield his "market wife" in the presence of visiting sales representatives. *Id.* at 70–72. Thornell would ask Brassfield to perform oral sex on him. *Id.* at 89, 91–92. He asked her to have sex with him—to have a *menage a trois* with Pierson and him at Pierson's apartment. *Id.* at 87, 104–06. He asked whether Pierson's mattress was soil shielded. *Id.* at 122. Thornell asked Brass-

field to have sex with him, or intimated something of a sexual nature on a daily basis. *Id.* at 163. Several times he asked her to have sex with him in Jack McLendon's office. *Id.* at 179. He asked her to go skinny dipping with him numerous times. *Id.* at 97. He kissed her hand and arm without permission. *Id.* at 164–65. He came up behind Brassfield and "rub[bed] himself against" her. *Id.* at 174, 193. In front of several other salespersons, Thornell said "I bet you like being spanked while you are having sex." *Id.* at 170–71. He commented that he liked Brassfield's dress because when she bent over he could see her "tits." *Id.* at 189–90.

### Lane McLendon

Lane McLendon asked Brassfield whether she wore panties. *Id.* at 201. He called her a "stupid bitch" on several occasions. *Id.* at 202. He joked about Thornell's comment that Brassfield was his "market wife." *Id.* at 73–74. He told Brassfield that he would fill her orders "when he was good and damn ready." *Id.* at 252.

### Yarn

Yarn told Brassfield that he didn't like women and that he was going to be sure Brassfield didn't remain at McLendon Furniture. *Id.* at 66. He threatened her with a clenched fist and stated "if I hear one more word out of you, girl, I'm going to slap your teeth out of your head." *Id.* at 82, 196–200. He claimed in front of customers and salespersons that Brassfield had stolen one of his customers. *Id.* at 145–50.

### DISCUSSION [3]

The parties raise several issues of law. The defendants contend that Brassfield's claims are barred because she failed to list her legal claims among the assets of her bankruptcy estate. The plaintiffs' contend

---

2. In determining the liability of McLendon Furniture, the Court will consider Brassfield's claims against defendant Mark Bodden. The facts underlying those allegations can be found in the Court's memorandum opinion filed October 8, 1996.

3. In the interests of Justice, the Court has done everything within its power to fairly evaluate the plaintiffs' claims. Plaintiffs' briefs leave a great deal to be desired. The Court takes this opportunity to put all parties on notice that from this point on, all pleadings placed before the Court must have adequate factual and legal support or they will be disregarded.

that, when determining liability for the individual defendants, the Court must consider the acts of all defendants. Both of these contentions are erroneous. A full analysis of these contentions is set out in the Court's Memorandum Opinion, 953 F.Supp. 1424, filed on October 8, 1996.

The defendants also contend that plaintiffs' claims are barred because they have failed to exhaust their administrative remedies. Specifically, defendants assert that plaintiffs claims are barred as to any defendants who were not named in their EEOC charges. Defendants rely on this Court's decision in *Dubisar–Dewberry v. Folmar,* 883 F.Supp. 648 (M.D.Ala.1995), to support their argument. In *Dubisar,* this Court dismissed several defendants from a Title VII action because they had not been named in the EEOC charge. *Id.* at 650. The Court implied that these defendants weren't part of the EEOC investigation. *Id.* at 651. The Court found that because the EEOC and the defendants were denied the opportunity to investigate, conciliate, or otherwise bring about compliance with the requirements of Title VII, the plaintiff was barred from naming the defendants in her judicial suit. *Id.*

█ In *Dubisar* the Court was careful to note that Title VII's administrative requirements are to be construed liberally. *Id.* (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460–61 (5th Cir.1970)). When, as here, the evidence reveals a pervasive atmosphere of harassment, it can reasonably be expected that the EEOC investigation will expand beyond the face of the EEOC charge. Thus, in the instant case, it is reasonable to expect that an investigation of all the named defendants "grew out of" the EEOC's investigation made pursuant to the charges filed by the plaintiffs. *See Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985); *White v. Wells Fargo Guard Services,* 908 F.Supp. 1570, 1580 (M.D.Ala.1995). Therefore, the policy considerations implicated in *Dubisar* are absent from the instant case. Accordingly, plaintiffs' failure to include some of the named defendants in their EEOC charges will not bar suit against those defendants.

## STANDARD OF REVIEW

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule

56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.; see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

## A. Plaintiffs' Title VII Claims and EPA Claim (Counts I–IV)[4]

### 1. Against all individual Defendants

As this Court has previously held, individual liability may not be imposed under a Title VII cause of action. *Smith v. Capitol City Club of Montgomery*, 850 F.Supp. 976 (M.D.Ala.1994). The plaintiffs are in agreement with this proposition. Pl.'s Resp. to Def.'s Mot. for Summ.J. at 30. Accordingly, with respect to the plaintiffs' federal claims, their Title VII and EPA claims, summary judgment in favor of each of the individual defendants, Jack McLendon, Lane McLendon, Thornell, Thrash, and Yarn is due to be granted.

### 2. Against McLendon Furniture Inc.

#### a. Hostile Working Environment

#### (Pierson Count I, Brassfield Count I)

Discriminatory conduct results in a hostile work environment when it is "so se-

vere or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin," thus, offending "Title VII's broad rule of workplace equality." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). To prevail on their hostile work environment claims, the plaintiffs must establish that: (1) they belong to a protected class; (2) they were subjected to unwelcome sexual harassment; (3) the harassment was based on their sex; and (4) the harassment affected a term, condition or privilege of employment. *See Henson v. Dundee*, 682 F.2d 897, 903–05 (11th Cir. 1982). Additionally, in order to hold the employer liable on a Title VII hostile work environment claim, the plaintiff must show either that: (1) the harasser is the employer or one of its agents; or (2) the employer knew or should have known of the harassment caused by co-workers, but failed to take corrective action. *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554 (11th Cir.1987); *see also Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317 (7th Cir. 1992).

When considering the second element, whether the conduct is unwanted, the Court must examine "'the totality of circumstances, such as the nature of the sexual advances and the context in which they occurred.'" *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 69, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). Evidence of provocative conduct on the part of the plaintiff is relevant to this inquiry. *Id.*

To satisfy the fourth element, a plaintiff must show that the harassment was "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citation omitted). In determining this question, courts must look to the totality of circumstances. *Id.* at 22–23, 114 S.Ct. at 371. While a "'mere utterance of an ... epithet

---

4. The defendants do not address Count III of the plaintiffs' Complaints. Thus, to the extent that Count III seeks relief distinct from that sought in plaintiffs' remaining Title VII counts, Count III

remains viable. Of course, this finding does not apply to individual defendants. *See* discussion *infra*.

which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII," the environment does not have to be so severe as to cause a 'nervous breakdown' or 'seriously affect employees' psychological well-being.'" *Id.* at 21–23, 114 S.Ct. at 370–71 (citations omitted).

McLendon Furniture argues that summary judgment is appropriate because the plaintiffs have not produced evidence that the harassment was unwelcome. Specifically, McLendon Furniture argues that the plaintiffs helped to create an atmosphere which fostered sexual comments and jokes. Def.'s Br. for Summ.J. against Pierson at 15; Def.'s Br. for Summ.J. against Brassfield at 16. McLendon Furniture has adduced a variety of evidence which could provide an inference that the plaintiffs contributed to the creation of a sexually charged environment. *See* Def.'s Br. for Summ.J. against Pierson at 15–16; Def.'s Br. for Summ.J. against Brassfield at 16–18. The Court agrees that this evidence is relevant and should, assuming all other conditions are satisfied, be presented to the jury. *See Meritor,* 477 U.S. at 69, 106 S.Ct. at 2406–07 (concluding that evidence of this nature is not per se inadmissible).

Ironically, McLendon Furniture's evidence leads the Court to find that summary judgment is inappropriate. In the absence of evidence that the plaintiffs may have encouraged the sexually-charged exchanges, summary judgment would be proper for the plaintiffs. The Court finds that plaintiffs' evidence is sufficient to establish each of the four elements of their harassment claims. Further, the Court finds that McLendon Furniture knew or should have known of the harassment, but failed to take any corrective action. Plaintiffs' evidence establishes, prima facie, that the harassment was unwanted. Pierson Depo. at 185 ("I considered the sexual harassment unwelcome"); Brassfield Depo. at 274 ("I've told them to go to hell. I've told them to stop. I've told them to kiss my ass."). McLendon Furniture's evidence merely demonstrates that there is indeed a genuine issue of material fact as to the second element of the plaintiffs' harassment claims—whether the harassment was un-

wanted. *See Meritor,* 477 U.S. at 68, 106 S.Ct. at 2406 ("[T]he question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact.") Accordingly, McLendon Furniture's motion for summary judgment on the plaintiffs' harassment claims is due to be denied.

**b. Equal Pay Act and Title VII Disparate Treatment Claims (Pierson Count II, Brassfield Count II)**

To establish a prima facie case under the Equal Pay Act, the plaintiffs must show that employees of the opposite sex (1) receive unequal wages, (2) for equal work, (3) on jobs requiring equal skill, effort and responsibility, and (4) which are performed under similar working conditions. *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792 (11th Cir.1992) (citation omitted). Initially, the plaintiffs' appear to have met this burden.

McLendon Furniture contends that the plaintiffs cannot establish their prima facie case because a male employee was paid the same "training wage" the plaintiffs initially received. An employer can justify a disparity in pay if it has in place a bona fide training program. *See Shultz v. First Victoria National Bank,* 420 F.2d 648 (5th Cir. 1969) (citing the Secretary of Labor's Interpretive Bulletin, 29 C.F.R. § 800.148). A bona fide training program must be "more than a post-event justification for disparate pay to men and women." *Id.* at 655. Of course, in a bona fide training program, male and female participants must be paid equally.

As noted earlier, McLendon Furniture as the moving party has the initial burden of establishing that there is no genuine issue of material fact on a particular claim or issue. Thus, here, McLendon Furniture has the burden of demonstrating to the Court that they had in place a bona fide training program, and that any disparity in the plaintiffs' pay stems from their participation in that training program. McLendon Furniture has failed to meet this initial burden.

In support of its contention that McLendon Furniture had in place a bona fide training program, McLendon Furniture offers the deposition testimony of Lane McLendon:

Q. Who—which one of the—Did all the salesmen, since you've been at McLendon Furniture, have they gone through a training program as you did have with Marsha—Ms. Pierson and Ms. Brassfield?

A. There—

Mr. Penton: What kind of training program? Are you talking about the wages thing?

Q. There was a training program. Didn't you have a training program—start a training program initially for salespersons?

A. Are you speaking as far as their wages or so far as the actual training of the products?

Q. First ninety days, didn't you have a training period when they're training?

A. We have not always had it since the company started, no.

Q. Okay. And when did you first start that?

A. About—About maybe—About three salesmen before they got there.

Q. Okay. And all three of those salesmen went on the thousand dollars and two percent?

A. Yes. To my knowledge.

Lane McLendon Depo. at 180–81. McLendon Furniture also directs the Court to Pierson's testimony:

Q. Tell me specifically what you were told with regard to the wages that you would be paid.

A. That I would get a thousand dollars a month and two percent commission.

Q. Were you ever told that that would be for a specific period of time?

A. Yeah. They did tell me it was going to be for about three to four months or something like that. I think so.

Pierson Depo. at 56. The Court finds Pierson's testimony only marginally relevant to the existence of a bona fide training system. The question is not whether McLendon Furniture *told* Pierson that she was paid differently because she was in a training program, but whether she *actually was in* a bona fide training program. Pierson's testimony does not help McLendon Furniture establish that they had in place a bona fide training program.

Considering all factual inferences in the light most favorable to the non-moving parties, Lane McLendon's testimony does not conclusively establish the existence of a bona fide training program. First, the Court notes that the testimony about the training program seems to be coming more from the attorney asking the questions than from Lane McLendon. Second, Lane McLendon's testimony seems to apply only to wages—that is, he appears to indicate that there was a training period in which lesser wages were paid participants. However, he does not indicate that McLendon Furniture had any type of substantive training program. A training program without any actual training does not justify a disparity in pay. *See Shultz*, 420 F.2d at 655–56. Third, his testimony raises more critical questions than it answers. When exactly, did the training program start? What sex were the participants the training program? Where are the pay records or other evidence that definitively demonstrates that training program participants received $1000/week plus 2% commission? What are the formal or informal policies and procedures which make up this training program? Without evidence which addresses these questions, the Court cannot conclude that McLendon Furniture had in place a bona fide training program. Accordingly, McLendon Furniture's motion for summary judgment on the plaintiffs' Equal Pay Act and Title VII disparate treatment claims is due to be denied.

### c. Plaintiffs' Retaliation Claims

### (Pierson Count IV, Brassfield Count IV)

To establish a *prima facie* case of retaliation, the plaintiffs must show (1) they engaged in protected activity; (2) McLendon Furniture took some sort of adverse employment action against them; and (3) a causal link exists between the protected activity and the adverse employment action. *Tipton v. Canadian Imperial Bank of Com-*

*merce,* 872 F.2d 1491, 1494 (11th Cir.1989), *reh'g denied,* 883 F.2d 79 (11th Cir.1989) (citations omitted); *Alford v. City of Montgomery, Alabama,* 879 F.Supp. 1143, 1152 (M.D.Ala.1995) (citations omitted). To establish the third element, the causal link, the plaintiff must prove that the protected activity was the "but-for" cause of the adverse employment decision. *Alford,* 879 F.Supp. at 1152.

With respect to Pierson's retaliation claim, McLendon Furniture argues that no adverse employment action was taken by McLendon Furniture after Pierson filed her EEOC complaint. However, Pierson testified, "[w]hat you are saying is, after I filed a complaint, it was—did they treat me worse? Yes, they did." Pierson Depo. at 287. Thus, the Court must decide whether the evidence of Pierson's poor treatment following the filing of her EEOC charge could amount to an "adverse employment action."

■ Pierson filed her charge with the EEOC August 26, 1994. In her deposition on pages 223–251, Pierson testifies about a number of incidents of harassment and disparate treatment which occurred after August 26, 1994. Thus, considering Pierson's testimony, that she was treated worse after she filed her charge with the EEOC, the Court finds that these incidents of harassment and disparate treatment may have been motivated by the filing of her EEOC charge. As discussed throughout this opinion, these incidents may support viable claims. Therefore, the Court finds that there is a genuine issue of material fact as to whether McLendon Furniture took adverse employment action against Pierson because she filed a charge with the EEOC. Accordingly, McLendon Furniture's motion for summary judgment on Pierson's retaliation claim is due to be denied.

Brassfield contends that McLendon Furniture discharged her in retaliation for protesting the discriminatory pay rate, the sexual harassment, and the hostile working environment. McLendon Furniture's argument can be interpreted to contend that Brassfield has not established that her protests were the "but-for" cause of her termination, or that McLendon Furniture had a legitimate non-

discriminatory reason for discharging Brassfield. Def.'s Br. for Summ.J. against Brassfield at 20–21.

Brassfield relies on Pierson's deposition testimony to rebut McLendon Furniture's arguments. Pierson stated that Thornell told her, "Sharon ... I just want you to know that Marsha Ann [Brassfield]˙ was not fired because she didn't have good sales or sales ability. She did a good job. It is just that the guys didn't want her here anymore." Pierson Depo. at 195. The Court finds that this evidence is sufficient to allow reasonable persons to infer both that she was terminated because of her protests and that McLendon Furniture's legitimate non-discriminatory reasons are pretextual. Accordingly, McLendon Furniture's motion for summary judgment on Brassfield's claim for retaliation is due to be denied.

## B. STATE LAW CLAIMS

### 1. Plaintiffs' Outrage Claims

### (Pierson Count VIII, Brassfield Count IX)

■ The Supreme Court of Alabama recognized the tort of outrage in *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala.1980) Under the tort of outrage, liability is imposed for "unprivileged, intentional or reckless conduct of an extreme and outrageous nature, and only that which causes severe emotional distress." *Id.* at 365. The court emphasized the severity of the conduct required to support an outrage claim: "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

■ To establish the tort of outrage, the plaintiff must prove three elements: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Moore v. Spiller Associated Furniture, Inc.,* 598 So.2d 835 (Ala.1992) (quoting *Perkins v. Dean,* 570 So.2d 1217, 1219 (Ala.1990)).

The Supreme Court of Alabama summarized the exceedingly narrow scope of the tort as follows:

> [T]he tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this court has held in a large majority of the outrage cases reviewed that no jury question was presented ... In fact, in the 12 years since *Inmon* was decided, all cases in which this court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials ... 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim ... 3) a case involving egregious sexual harassment. (emphasis added)

*Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993).

In *Busby v. Truswal Systems Corp.*, 551 So.2d 322, 324 (Ala.1989), the Alabama Supreme Court held that a plant supervisor's extreme sexual harassment of his female employees created a jury question as to liability for the tort of outrage. In *Busby*, the court found that there was evidence of at least seventeen incidents of harassment.[5] The court found there was evidence that the harasser,

> (1) invited Busby and Money to swim in his pool in the nude with him; (2) told Busby his hands were cold and asked if he could put them in her pockets to keep them warm; (3) told the plaintiffs that he would 'put a stick on their machines' so they could masturbate while working; (4) said that he could perform intercourse as fast as one of the machines at the plant could operate; (5) said that he wished that the plaintiffs would come to work braless and wear less clothing; (6) told one of the plaintiffs that if she had not stayed up all night having sex she could do her work properly; (7) told one employee that if she would give him 30 minutes with her that he

would fill her pants in nine months for her; (8) acted as if he was going to pinch one plaintiff's breasts with a pair of pliers and with his hands; (9) said that he should send one of the plaintiffs across the street to where a group of men were standing because she stayed sexually aroused all of the time; (10) told one of the plaintiffs that he was very tired and asked her if she would accompany him to the restroom and hold his penis while he urinated; (11) told one of the plaintiffs that her nipples were as large as another employee's entire breasts; (12) attempted to follow one of the plaintiff's into the restroom and when she asked him where he was going, said that he was going to help her; (13) followed one of the plaintiff's one night; (14) said that a table in his office had been damaged when one of the plaintiffs and a male co-employee had sex on top of it; (15) openly stared at the plaintiffs' sexual anatomy; (16) put his arm around the plaintiffs, grabbed their arms, and stroked their necks; and (17) made other lewd remarks and gestures to the plaintiffs.

*Busby*, 551 So.2d at 324. The court found that these actions, considered altogether, could constitute extreme and outrageous conduct. *Id.*

### a. Defendant Thornell

■ The Court finds that with respect to plaintiff Pierson, Thornell's conduct was not extreme and outrageous. Clearly, Thornell's behavior was inappropriate, but the Court cannot say that his conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *Inmon*, 394 So.2d at 365. Thornell's behavior simply does not approach the extreme and outrageous conduct outlined in *Busby*. Therefore, as to Pierson's claim for outrage, Thornell's motion for summary judgment is due to be granted.

■ With respect to plaintiff Brassfield, the Court finds that Thornell used his position as manager to engage in a continuous, opprobrious pattern of sexual harassment.

---

**5.** The *Busby* Court noted the incidents of harassment in the context of deciding the plaintiff's invasion of privacy claim. The Court presumes this same evidence was utilized by the *Busby* Court to assess the plaintiff's outrage claim. *See* 551 So.2d at 324.

The Court finds that a reasonable person should have known that emotional distress would result from Thornell's conduct toward Brassfield, that his conduct was extreme and outrageous, and that Brassfield suffered severe distress. Therefore, as to Brassfield's claim for outrage, Thornell's motion for summary judgment is due to be denied.

### b. Defendant Lane McLendon

The Court finds that even if the plaintiffs' evidence is accepted as true, neither plaintiff has adduced evidence sufficient to maintain an outrage claim. When referenced against the exceedingly narrow grounds upon which the Alabama Supreme Court has held an outrage claim can be sustained, *See Busby supra; Thomas supra,* the Court finds that, as a matter of law, Lane McLendon's conduct was not extreme and outrageous. Accordingly, Lane McLendon's motion for summary judgment on plaintiffs' claims for outrage is due to be granted.

### c. Defendant Thrash

The Court finds that Thrash's conduct towards plaintiff Pierson was less offensive than Lane McLendon's behavior. As noted, Lane McLendon's behavior was not extreme and outrageous. In accordance with the discussion thereof, the Court finds that summary judgment is due to be granted on Pierson's claim for outrage against Thrash.

### d. Defendant Yarn

The Court finds that Yarn's conduct towards plaintiff Brassfield was less offensive than Lane McLendon's behavior. As noted, Lane McLendon's behavior was not extreme and outrageous. In accordance with the discussion thereof, the Court finds that summary judgment is due to be granted on Brassfield's claim for outrage against Yarn.

### e. Defendant Jack McLendon

Jack McLendon's conduct toward the plaintiffs was clearly not extreme or outrageous. The plaintiffs, however, argue that he should be liable because he ratified or adopted the acts of all McLendon Furniture employees. An employer may be held liable for the intentional tort of its employees if, in addition to other factors, it ratifies or adopts the tortious conduct of its employees. *See Mardis v. Robbins Tire & Rubber Co.,* 669 So.2d 885, 889 (Ala.1995). Here, McLendon Furniture Inc., not Jack McLendon the individual, was the plaintiffs' employer. In the absence of evidence that McLendon Furniture was a "sham" corporation, Jack McLendon cannot be liable for the acts of McLendon Furniture employees. *See Transamerican Properties, Inc. v. Watkins,* 673 So.2d 422, 425–26 (Ala.Civ.App. 1995). Therefore, as to plaintiffs' claims for outrage against Jack McLendon, summary judgment is due to be granted.

### f. McLendon Furniture

In *Mardis,* the Alabama Supreme Court held that for an employer to be liable for the intentional torts of its agents, a plaintiff must provide evidence that:

(1) that the agent's wrongful acts were committed in the line and scope of the agent's employment; or (2) that the acts were committed in furtherance of the business of the employer; or (3) that the employer participated in, authorized, or ratified the wrongful acts.

669 So.2d at 889 (citation omitted). To show that an employer authorized or ratified an employee's conduct, the plaintiff,

in addition to proving the underlying tortious conduct of an offending employee, a complaining employee must show that the employer (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take "adequate" steps to remedy the situation.

*Potts v. BE & K Construction Co.,* 604 So.2d 398, 400 (Ala.1992).

Here, the alleged sexual harassment unquestionably occurred while furthering McLendon Furniture's business—the harassment occurred primarily while the plaintiffs were in sales meetings, on the sales floor, or

at the sales desk. The Court has already noted that Thornell's conduct towards Brassfield was sufficient to maintain a claim of outrage. The Court must now determine whether McLendon Furniture adopted or ratified Thornell's conduct.

■ The evidence shows that Jack McLendon, as President of McLendon Furniture, was responsible for overseeing the policies and practices at McLendon Furniture. Jack McLendon Depo. at 20. The evidence also shows that Jack McLendon received regular reports from his managers or was otherwise aware of the "policies" at McLendon Furniture, but took no action to abate the harassment. Thus, the Court finds that there is an issue of fact as to whether Jack McLendon knew about Thornell's harassment of Pierson. Further, Jack McLendon testified that his management style was to delegate authority to department heads and allow them to make their own decisions. *Id.* If Thornell had final decision making authority, then his actions are attributable to McLendon Furniture. Thus, even if Jack McLendon had no knowledge that Brassfield was being harassed, reasonable people could still conclude that McLendon Furniture had the knowledge that Brassfield was being harassed.

The Court also finds that McLendon Furniture should have known that Thornell's conduct amounted to a continuing tort. The constant, demeaning harassment of Brassfield by Thornell was such that reasonable persons would recognize the conduct to be tortious.[6] Finally, the Court finds that McLendon Furniture failed to take adequate steps to protect Brassfield from the harassment. Because McLendon's Furniture took no steps to halt the harassment of Brassfield, it is implicit that they did not take "adequate steps to remedy the situation." *See Potts,* 604 So.2d at 401. Accordingly, with respect to Brassfield's outrage claim against McLendon Furniture, McLendon Furniture's motion for summary judgment is due to be denied.

■ The Court notes that after an exhaustive search, it can find no caselaw in support of plaintiff Pierson's theory that, although the evidence is insufficient to impose individual liability on a McLendon Furniture employee for the tort of outrage, the combined or concerted actions of McLendon Furniture employees is sufficient to maintain her claim for outrage against McLendon Furniture, Inc. Therefore, with respect to Pierson's outrage claim against McLendon Furniture, McLendon Furniture's motion for summary judgment is due to be granted.

**2. Plaintiffs' Invasion of Privacy Claims (Pierson Count VI, Brassfield Count V)**

■ Alabama law recognizes the tort of invasion of privacy. The Supreme Court of Alabama, in an opinion written upon certification from the Circuit Court of Appeals for the Eleventh Circuit, held that this tort includes four separate "wrongs":

> 1) [T]he intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use.

*Phillips v. Smalley Maintenance Services,* 435 So.2d 705, 708 (Ala.1983) (citations omitted). The Alabama Supreme Court later refined this definition:

> [There are] two separate standards for finding the tort of an invasion of privacy: 1) If there has not been public or commercial use or publication, then the proper standard is whether there has been an 'intrusion upon the plaintiff's physical solitude or seclusion,' or a 'wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities' and 2) if there has been public or commercial use or publication of private information, then the proper standard is whether there has been 'unwarranted publicity,' 'unwarranted appro-

---

**6.** This is particularly true when, as in the instant case, the harasser is also a supervisor. Such a relationship adds a coercive element which makes the harassment even more egregious.

priation or exploitation of one's personality,' publication of private affairs not within the legitimate concern of the public, an intrusion into one's 'physical solitude or seclusion,' the placing of one in a 'false but not necessarily defamatory position in the public eye,' or an 'appropriation of some element of [one's] personality for commercial use.'

*Hogin v. Cottingham*, 533 So.2d 525, 530–31 (Ala.1988) (citations omitted). Thus, the tort of invasion of privacy may arise when there is either a "public and commercial use or publication" or a "wrongful intrusion into one's private activities or solitude or seclusion." *Johnson v. Corporate Special Services*, 602 So.2d 385, 387 (Ala.1992).

▬▬ Here, the plaintiffs are claiming that the defendants wrongfully intruded in their privacy, physical solitude, or seclusion. The *Hogin* Court elaborated on a wrongful intrusion claim:

'[T]here must be something in the nature of prying or intrusion' and 'the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private.' Two primary factors are considered in 'determining whether or not an intrusion which effects access to private information is actionable. The first is the means used. The second is the defendant's purpose for obtaining the information.'

553 So.2d at 531 (citations omitted). The Court notes that the inquiry in an invasion of privacy claim is similar to that made in an outrage claim. When evaluating an outrage claim a court asks whether the defendant's conduct was "extreme and outrageous," while when considering an invasion of privacy claim, the court determines whether the defendant has made a "wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Hogin*, 533 So.2d at 530–31. While conduct needed to support an invasion of privacy claim need not be "extreme and outrageous," in cases where a viable claim for invasion of privacy exists, the defendant's

behavior frequently approaches such a degree. *Compare Busby supra* (factors supporting invasion of privacy claim supported outrage claim) with *Carter v. Innisfree Hotel, Inc.*, 661 So.2d 1174 (Ala.1995) (facts supported invasion of privacy claim premised on wrongful intrusion but not outrage claim).

Four cases decided by the Alabama Supreme Court supply this Court with a roadmap for determining whether comments and questions of a sexual nature are sufficiently outrageous to support a claim for invasion of privacy. *Busby, supra,* represents one end of the spectrum—extreme and outrageous sexual harassment will support an invasion of privacy claim. In *Phillips v. Smalley Maintenance Services*, 435 So.2d 705 (Ala.1983), the court did not address the viability of an outrage claim, but found that an action for invasion of privacy would lie where: (1) the employer questioned a female employee two or three times a week for period of three months behind "locked doors" about the employee's sexual experiences; (2) the employer later made coercive sexual advances towards employee; and (3) whereupon the employee suffered severe mental trauma. However, in *McIsaac v. WZEW–FM Corp.*, 495 So.2d 649, 650 (Ala.1986), although an employer repeatedly asked a female employee to "be available," tried to kiss her several times and later attempted to have her fired for resisting his advances, the court found that the plaintiff/employee had failed to establish a viable invasion of privacy claim. Finally, in *Logan v. Sears, Roebuck & Co.*, 466 So.2d 121, 123–24 (Ala.1985), the court held that the defendant's statement that the plaintiff was as "queer as a three dollar bill" was not outrageous enough to maintain an invasion of privacy claim.

### a. Defendant Thornell

▬▬ In accordance with *Busby,* the Court finds that the extreme and outrageous nature of the sexual harassment of Brassfield by Thornell will support a claim for invasion of privacy against Thornell. Therefore, Thornell's motion for summary judgment on Brassfield's invasion of privacy claim is due to be denied.

■ The Court finds that Thornell's conduct toward Pierson is closer to the situation in *McIsaac* than that in *Phillips.* Thornell's harassment of Pierson was less pervasive than the harassment in *Phillips.* In fact, Thornell's conduct towards Pierson was not as extreme as that discussed in *McIsaac.* Thus, the Court finds that any invasion of Pierson's privacy by Thornell was not performed "in such a manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Hogin,* 533 So.2d at 530–31. Accordingly, Thornell's motion for summary judgment on Pierson's outrage claim is due to be granted.

### b. Defendant Lane McLendon

■ Not all comments with a discriminatory connotation provide support for an invasion of privacy claim. Lane McLendon's statements and actions which were discriminatory, but non-sexual in nature, did not "pry" into the private aspects of Pierson's life. Further, the Court finds that the sexually provocative questions and comments made by Lane McLendon are not sufficient to sustain Pierson's claim for invasion of privacy. The comments simply do not rise to the level of invasiveness found in *McIsaac.* Accordingly, Lane McLendon's motion for summary judgment on Pierson's invasion of privacy claim is due to be granted.

■ The Court finds that Brassfield's claim is similarly non-viable. Lane McLendon's sporadic sexual comments to Brassfield do not approach the level of invasiveness found in *McIsaac.* Accordingly, Lane McLendon's motion for summary judgment on Brassfield's invasion of privacy claim is due to be granted.

### c. Defendant Thrash

■ Thrash's conduct towards Pierson was not as intrusive as Thornell's or Lane McLendon's conduct. Accordingly, the Court finds that Braxton Thrash's motion for summary judgment on Pierson's invasion of privacy claim is due to be granted.

### d. McLendon Furniture

Pursuant to the foregoing discussion of individual liability and respondeat superior, the Court finds that McLendon Furniture's motion for summary judgment on Pierson's claim for invasion of privacy is due to be granted; McLendon Furniture's motion for summary judgment on Brassfield's claim for invasion of privacy is due to be denied.

### 3. Plaintiffs' Defamation Claims

### (Pierson Count VII, Brassfield Count VI)

■ A plaintiff may establish a prima facie case of defamation by proving the following:

> 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication of the statement.

*Ledbetter v. United Ins. Co. of America,* 837 F.Supp. 381, 387 (M.D.Ala.1993), *aff'd,* 59 F.3d 1247 (11th Cir.1995) (quoting *McCaig v. Talladega Publishing Co.,* 544 So.2d 875, 877 (Ala.1989)); *see also Drill Parts and Serv. Co. v. Joy Mfg. Co.,* 619 So.2d 1280, 1289 (Ala.1993) (quoting same case).

■ "The question of 'whether the communication is reasonably capable of a defamatory meaning is a question, in the first instance, for the court' and 'if the communication is not reasonably capable of a defamatory meaning, there is no issue of fact, and summary judgment is proper.'" *Drill Parts and Serv. Co. v. Joy Mfg. Co.,* 619 So.2d 1280, 1289–90 (Ala.1993) (quoting *Harris v. School Annual Publishing Co.,* 466 So.2d 963, 964–65 (Ala.1985)). Any statement from which a reasonable person might infer a false factual connotation which would harm the victim's reputation in the eyes of the community, is "capable of a defamatory meaning." *Clark v. America's First Credit Union,* 585 So.2d 1367, 1370–71 (Ala.1991).

■ Additionally, Alabama law provides, "[a]ny words written, spoken, or printed of any woman falsely imputing to her a want of chastity are actionable without proof of spe-

cial damages." Ala.Code § 6–5–181 (1975). Thus, comments or statements which impute sexual misconduct, regardless of whether characterized as fact or opinion, will support a defamation claim.

### a. Defendant Thornell

The Court finds that Thornell's reference to Brassfield as his "market wife" in the presence of visiting furniture representatives is sufficient to support Brassfield's claim for defamation.[7] This was a false statement, communicated to a third party, which imputed a want of chastity to Brassfield. *See Tingle v. Worthington,* 215 Ala. 126, 110 So. 143 (1926) (statement that woman was "a red light district woman" was actionable). Accordingly, Thornell's motion for summary judgment on Brassfield's claim for defamation is due to be denied.

The Court finds that reasonable people could decide that the statements and comments of Thornell imputed to Pierson a want of chastity. However, Thornell argues that his comments are not actionable because they were not communicated to non-corporate employees. Thornell cites *Burks v. Pickwick Hotel,* 607 So.2d 187 (Ala.1992), and *Atkins Ford Sales, Inc. v. Royster,* 560 So.2d 197 (Ala.1990) in support of his contention. In *Burks,* the court found that there was no liability when the defamatory comments were published to company employees "to the extent reasonably necessary to investigate [the plaintiff's] employment behavior." 607 So.2d at 190. In *Atkins,* the defendant defamed the plaintiff when he accused him of stealing from the company. 560 So.2d at 199. The court held that the defendant's communication of this defamatory statement to other company employees, made while the defendant was investigating the missing funds, did not constitute communication to a third party. *Id.* at 201. Notably however, the court went on to state, "[i]t cannot reasonably be argued that [the defendant's] statements to [the plaintiff's] parents and to Harris, an employee hired to replace [the plaintiff],

were necessary in determining the location of the missing funds or were within the line of [the defendant's] duties." *Id.* Because the defendant's communication of the defamatory statements to the new employee was not prompted by any duty, the court held that the defendant could be liable for defamation. *See id.; see also Nelson v. Lapeyrouse Grain Corp.,* 534 So.2d 1085, 1093 (Ala.1988) ("when officers and employees of a corporation act within the scope of their employment, *and within the line of their duties,* they are not third persons vis-a-vis the corporation") (emphasis added).

Here, Thornell's comments about Pierson were not made within the line of his duties. The defamatory statements in no way related to the business of selling furniture. Further, the defamatory statements were not made in pursuit of some legitimate business objective. Therefore, the Court finds that Thornell's publication of defamatory statements about Pierson to other McLendon employees constituted communications to third parties within the meaning of Alabama law. Accordingly, Thornell's motion for summary judgment on Pierson's claim for defamation is due to be denied.

### b. Defendant Lane McLendon

The Court finds that Lane McLendon's statements about Pierson, which were communicated to other McLendon Furniture employees, could be determined by reasonable people to impute a want of chastity to Pierson. In particular, the Court finds Lane McLendon's statement that the "P" on Pierson's necklace stood for prostitute, leaves no doubt that Pierson has presented a viable action for defamation. Accordingly, Lane McLendon's motion for summary judgment on Pierson defamation claim is due to be denied.

The Court finds that Brassfield has failed to adduce proof that Lane McLendon communicated defamatory statements to third parties.[8] Although Lane McLendon

---

7. The Court finds that, even in the absence of the "market wife" statement, Thornell's remaining conduct and statements towards Brassfield imputed to her a want of chastity.

8. In her deposition, Brassfield testified that she was told by a customer that Lane McLendon had made derogatory comments about Brassfield to the customer. Brassfield Depo. at 226–27. If Brassfield had adduced this evidence by entering

allegedly called Brassfield a "stupid bitch," this statement was not communicated to any third party. *See* Brassfield Depo. at 202–03. Further, the Court finds that Lane McLendon's sole question as to whether Brassfield wore panties is insufficient to impute to her a want of chastity. Accordingly, Lane McLendon's motion for summary judgment on Brassfield's defamation claim is due to be granted.

### c. Defendant Thrash

■ The Court finds that Thrash's statements about Pierson fail to impute to her a want of chastity, nor were Thrash's statements objectively false. Accordingly, Thrash's motion for summary judgment on Pierson's defamation claim is due to be granted.

### d. Defendant McLendon Furniture

The Court has found that McLendon Furniture's managers, Thornell and Lane McLendon, defamed Brassfield and Pierson respectively. The Court also found that Thornell's and McLendon's intentional torts should be charged to McLendon Furniture. Accordingly, McLendon's Furniture's motion for summary judgment on the plaintiffs' claims for defamation is due to be denied.

### 4. Brassfield's Assault Claims (Count VII)

■ Under Alabama law an assault is an unlawful offer to touch a person coupled with the present ability to do so, such that the words or action create a reasonable fear of imminent contact. *Holcombe v. Whitaker*, 294 Ala. 430, 318 So.2d 289, 294 (1975). While it is true that words alone cannot constitute an assault, *see Ex parte Hammett*, 259 Ala. 240, 66 So.2d 600, 601 (1953), words accompanied by a show of force or other action may be sufficient. *Id.* Here, the record shows that on several occasions Yarn threatened Brassfield with physical violence. Yarn's act of clenching his fist while telling Brassfield that he was going to knock her teeth down her throat is sufficient to present

the customer's affidavit into the record, the Court would have found Brassfield's defamation claim against Lane McLendon viable. However, in its current form, Brassfield's statement is in-

a jury question on Brassfield's assault claim. Brassfield Aff. at 12. Accordingly, Yarn's motion for summary judgment on Brassfield's assault claim is due to be denied.

■ Furthermore, the Court finds that McLendon Furniture may have adopted or ratified Yarn's conduct. Brassfield testified that she told Jack McLendon about the incident with Yarn. Brassfield states:

> [I] asked [Jack] McLendon, I didn't understand why I had to work in an environment where I was being threatened physically, that I do a good job. I come to work every day. And [Jack] McLendon kind of—I don't want to say he smirked, but he got a grin on his face. And he said, well, [Yarn] is just a religious kook. You just have to overlook [Yarn].

Brassfield Depo. at 198. Brassfield further testified that Yarn threatened her on more than one occasion. *Id.* at 194. This testimony indicates that McLendon Furniture knew of the tortious actions of its employee (Yarn) and may have failed to take adequate steps to prevent future incidents. Accordingly, McLendon Furniture's motion for summary judgment on Brassfield's assault claim is due to be denied.

### 5. Brassfield's Assault and Battery Claims (Count VIII)

■ " 'A successful assault becomes a battery.' " *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala.1986) (quoting *Singer Sewing Machine Co. v. Methvin*, 184 Ala. 554, 63 So. 997, 1000 (1913)). In her affidavit, Brassfield states:

> One night when I was in the back of the store bending over to look through a catalogue of fabrics, [Thornell] came up behind me, grabbed my breasts with his hands and pressed his groin area against my body. This act frightened me severely and I was scared that he would rape me.

Brassfield Aff. at 6. Given this statement, the Court has little difficulty finding that Thornell's motion for summary judgment on

admissibly hearsay, and cannot be considered by the Court. *See Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656 (11th Cir.1984).

Brassfield's claim for assault and battery is due to be denied.

As discussed previously, there is a question of fact as to whether the actions of Thornell are per se attributable to McLendon Furniture. Therefore, McLendon Furniture's motion for summary judgment on Brassfield's assault and battery claim is due to be denied.

### 6. Pierson's Constructive Discharge Claim (Count V)

In *Irons v. Service Merchandise,* 611 So.2d 294 (Ala.1992) the Supreme Court of Alabama defined the independent action of constructive discharge as follows:

> [i]f the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has [brought about] a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

611 So.2d at 295 (quoting *Jurgens v. EEOC,* 903 F.2d 386, 390 (5th Cir.1990)).

Pierson has put before the Court evidence of pervasive sexual harassment and disparate treatment. Further, Pierson testified:

> A lot of times after starting in October after I took a vacation, I was nauseated most all the time I worked there because the conversation was demoralizing. It was hard to even sell. And it came to the point where I had to quit because of the way I was being treated. And when Lane took his finger and tried to blow me away, then that's when I just had to quit. I had to get out of there because I didn't understand that.

Pierson Depo. at 287. Pierson has raised a genuine issue of material fact as to whether she was constructively discharged. Accordingly, McLendon Furniture's motion for summary judgment on Pierson constructive discharge claim is due to be denied.

### ORDER

In accordance with the foregoing memorandum opinion, it is CONSIDERED and ORDERED that:

(1) Defendant McLendon Furniture's motion for summary judgment on plaintiff, Sharon K. Pierson's claims under Count I, Count II, Count III, Count IV, Count V, and Count VII of her Complaint be and the same is hereby DENIED. McLendon Furniture's motion for summary judgment on plaintiff Pierson's claims under Count VI, and Count VIII of her Complaint be and the same is hereby GRANTED.

Defendant McLendon Furniture's motion for summary judgment on plaintiff, Marsha Ann Brassfield's claims under Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, and Count IX of her Complaint be and the same is hereby DENIED.

(2) Defendant Jeffery Thornell's motion for summary judgment on plaintiff Pierson's claims under Count I, Count II, Count III, Count IV, Count V, Count VI, and Count VIII of her Complaint be and the same is hereby GRANTED. Thornell's motion for summary judgment on plaintiff Pierson's claim under Count VII of her Complaint be and the same is hereby DENIED.

Defendant Thornell's motion for summary judgment on plaintiff Brassfield's claims under Count I, Count II, Count III, and Count IV of her Complaint be and the same are hereby GRANTED. Thornell's motion for summary judgment on plaintiff Brassfield's claims under Count V, Count VI, and Count VII of her Complaint be and the same is hereby DENIED.

(3) Defendant Lane McLendon's motion for summary judgment on plaintiff Pierson's claims under Count I, Count II, Count III, Count IV, Count V, Count VI, and Count VIII of her Complaint be and the same is hereby GRANTED. Lane McLendon's motion for summary judgment on plaintiff Pierson's claim under Count VII of her Complaint be and the same is hereby DENIED.

Defendant Lane McLendon's motion for summary judgment on plaintiff Brassfield's claims under Count I, Count II, Count III, Count IV, Count V, Count VI, and Count IX of her Complaint be and the same is hereby GRANTED. A judgment in accordance with this finding will be entered separately.

(4) Defendant Walter Yarn's motion for summary judgment on plaintiff Brassfield's claims under Count I, Count II, Count III, Count IV, and Count IX of her Complaint be and the same is hereby GRANTED. Yarn's motion for summary judgment on plaintiff Brassfield's claim under Count VII of her Complaint be and the same is hereby DENIED.

(5) Defendant Braxton Thrash's motion for summary judgment on plaintiff Pierson's claims under Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, and Count VIII of her Complaint be and the same is hereby GRANTED. A judgment in accordance with this finding will be entered separately.

(6) Defendant Jack C. McLendon's motion for summary judgment on plaintiff Pierson's claims under Count I, Count II, Count III, Count IV, Count V, and Count VIII of her Complaint be and the same is hereby GRANTED. A judgment in accordance with this finding will be entered separately.

Defendant Jack C. McLendon's motion for summary judgment on plaintiff Brassfield's claims under Count I, Count II, Count III, Count IV, and Count IX of her Complaint be and the same is hereby GRANTED. A judgment in accordance with this finding will be entered separately.